Donald Page **MOORE**, Candidate for State's Attorney in the Democratic Primary Election, and Bernard Carey, Candidate for State's Attorney in the Republican Primary Election, Plaintiffs-Appellants,

v.

Stanley T. **KUSPER**, Jr., et al., Defendants-Appellees.

No. 72–1197.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1972.

Decided July 18, 1972.

Rehearing Denied Sept. 7, 1972.

Peter C. John, Marshall Patner, Chicago, Ill., for plaintiffs-appellants.

Sophia H. Hall, William R. Ming, Jr., Aldus S. Mitchell, Chicago, Ill., for defendants-appellees.

Before SWYGERT, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

SWYGERT, Chief Judge.

This is an appeal from the district court's dismissal of plaintiffs' complaint and emergency motion for preliminary injunction in which they sought to enjoin the March 21, 1972 primary election on the basis of violations of the Illinois Election Code by the Board of Election Commissioners of the City of Chicago. On March 16, 1972 plaintiffs filed an emergency appeal with this court for an injunction pending appeal. That motion was denied on March 20, 1972 on the ground that there existed substantial factual disputes which rendered the case inappropriate for injunctive relief by this court. Nevertheless, in its order denying the relief sought, this court noted that it would consider an expedited appeal in order that the issues raised could be resolved prior to the November 7 general election. That expedited appeal is now before us.

The facts of this case lend themselves to rather brief exposition. Article 14 of the Illinois Election Code designates the procedures to be followed in the selection of election judges in the precincts within municipalities. It provides that the respective county central committee chairmen of the two leading political parties shall submit certified lists, according to precinct, of five persons to act as election judges in each precinct. Ill.Rev.Stat., ch. 46, § 14–3.1. The chairman of the Republican Central Committee is required to submit names of three persons for each odd-numbered precinct and two persons for each even-numbered precinct. The chairman of the Democratic Central Committee follows this procedure in reverse. The statute further provides that the Board of Election Commissioners is then required to compile the lists into a "report" by assigning each proposed judge to the precinct designated in the certified lists. Ill.Rev.Stat., ch. 46, § 14–5. The Board then gives public notice of hearing in the Circuit Court of Cook County, Illinois, to insure that the public is provided with an opportunity to challenge the qualifications of any judge. These challenges are made in a judicial hearing in which the court passes on the qualifications of the proposed judges. If no objection is raised, the court authorizes the person to act as an election judge.

Prior to the deadline for the submission of names of candidates for positions of election judges for the March 21 primary and November 1972 general elections, the chairman of the Republican Cook County Central Committee submitted to the defendant Election Board certified lists, arranged by precincts, of the names of persons qualified to act as election judges. This list was in substantial conformance with the provisions of Article 14 of the Illinois Election Code. The Board, instead of compiling the "report" as required by statute, allegedly deleted the names of at least 480

persons from the certified lists.[1] Plaintiffs' complaint alleges that the 480 persons who were thus removed were all members of a civic organization called LEAP (Legal Elections in All Precincts) and that they were removed solely for this reason. These names were replaced by the names of 480 persons unknown to the plaintiffs. Finally, plaintiffs allege that the Board failed to publish notice of the hearing on confirmation of these replacements, thereby allowing confirmation of the replacements without affording the public an opportunity to challenge their qualifications.

The plaintiffs' complaint alleges that the Board's action not only violated the Illinois Election Code, but also infringed the plaintiffs' rights to equal protection, due process, freedom of association and the right to vote and have the vote effectively counted. These rights, protected by the first, fifth and fourteenth amendments, together with rights subject to prosecution under sections 1983 and 1985 of the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985 are the basis upon which federal jurisdiction is predicated. 28 U.S.C. §§ 1331, 1343.

The district court, after conducting a hearing into the allegations of the complaint, denied plaintiffs' emergency motion for preliminary injunctive relief and dismissed the complaints with respect to plaintiff Moore; the court ruled that he lacked standing because he was an independent candidate of the Democratic primary and, as such, was not entitled to raise the question of irregularities in the selection of Republican election judges. As to plaintiff Carey, the court abstained on the basis that there existed an adequate remedy at law in the state courts and that since election judges are officers of the Illinois courts, "challenging their selection would be more appropriately litigated in that forum." We affirm on other grounds.

■ In their complaint, plaintiffs adequately allege the requirements and procedures set forth by the Illinois Election Code for the selection of election judges and their allegations as to the Board's failure to comply with those procedures state a claim sufficient to maintain an action in the Illinois courts. However, to invoke the jurisdiction of the federal courts and to be entitled to relief therefrom, the plaintiffs must allege more than the mere failure of state officials to follow state law. Snowden v. Hughes, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944). In order to state a federal cause of action upon which relief could be granted, plaintiffs would have had to allege that the Election Board's actions violated some federally protected or constitutionally guaranteed right of the plaintiffs. Although the complaint does allege the requisite constitutional rights, it does not allege an individual injury to these plaintiffs.

■■ Our examination of the complaint reveals no allegations as to how the plaintiffs will be injured by the Board's substitution of judges. We find no allegation in the complaint that the substituted judges would act in such a manner as to deprive these plaintiffs or members of the franchised public of their right to vote and to have their vote

---

1. The defendants seek to justify the removal of the names submitted by the Republican Party chairman by asserting that those candidates failed to file applications for the positions as they allege is required by law. The Board contended at the proceeding in the district court and again in oral argument before this court, that because it is the duty of the Election Board to determine the qualifications of a proposed judge, such applications are necessary to the proper administration of the Board's function. The plaintiffs counter this argument by noting that the record contains a sworn affidavit to the effect that applications were in fact filed for the LEAP (Legal Elections in All Precincts) judges. Additionally, plaintiffs point out that the statute does not specifically require the filing of applications and that the Board has no written administrative requirement that they be filed. This issue involves contested questions of both fact and law which, due to our resolution of the jurisdictional question, we are not required to resolve here.

counted equally. Similarly, we find no allegation that the substituted judges failed to meet the qualifications required by statute or that they were otherwise unfit to act as election judges. Indeed, it is difficult for us to foresee how the plaintiffs, who admit that they did not even know the identity of the substituted judges, could properly allege an actual potential injury to a federally protected right. It is not sufficient to invoke the talisman of due process or equal protection. Some form of injury must be alleged. In the absence of an allegation that the substituted election judges would subvert the election procedures or in some other manner cause the election to be unfair, we can find no deprivation of the constitutional rights asserted by the plaintiffs.

Similarly, without such an allegation, the plaintiffs cannot invoke the jurisdiction of this court under the 1871 Civil Rights Act. As we said in Manion v. Holzman, 379 F.2d 843, 845 (7th Cir.), cert. denied, 389 U.S. 976, 88 S.Ct. 479, 19 L.Ed.2d 470 (1967), injunctive relief for alleged violations of the Illinois election laws is not available in the federal courts "in the absence of an allegation to support the existence of some individual injury to the plaintiff."

Citing Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1971), for the proposition that the arbitrary refusal to afford fundamental fair play in elections deprives plaintiffs of federally protected rights, the plaintiffs argue that they have stated a cause of action upon which a federal court can grant relief. This court's decision in *Briscoe*, however, is inapposite to the instant appeal. In *Briscoe*, the court held that it was a denial of due process for this Board of Election Commissioners to bar twelve candidates from the ballot in the 1967 Chicago aldermanic elections on the basis of unpublished, hypertechnical administrative requirements for signatures on nominating petitions. There, the plaintiffs were the candidates themselves and the injury suffered as a result of the Board's ac-

tion was patent. The same distinction applies to the cases which apply due process and equal protection standards to state election procedures. *See* Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1969); Snowden v. Hughes, *supra*; Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969). In each case, the plaintiff has been able to allege a specific injury which is individual to him. That has not been done in this case.

Appellants, having not alleged an injury to a federally protected right, have failed to state a cause of action upon which relief can be granted. The judgment of the district court is affirmed.

CUMMINGS, Circuit Judge (concurring in part and dissenting in part).

On abstention grounds, I would affirm the judgment below as to (1) the application issues raised by the complaint discussed in note 1 of the majority opinion and (2) the question whether, subject to state court confirmation, the respective party chairmen or the Election Board members, or both, have the discretion to determine the qualifications or willingness to serve of the persons certified on the lists submitted by the respective party chairmen for election judgeships under Ill.Rev.Stats. (1971), ch. 46, § 14–3.1. Abstention is appropriate because this part of Article 14 of the Illinois Election Code has not been construed in any Illinois court and its terms are far from clear in particulars that go to the foundation of these portions of the complaint. Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (decided May 30, 1972); Jackson v. Ogilvie, 401 U.S. 904, 91 S.Ct. 642, 27 L.Ed.2d 803.

However, I must respectfully dissent from the majority disposition of that part of the complaint alleging as follows:

"13. In addition, and contrary to the mandatory provisions of the stat-

**260**

ute, defendants failed to publish or otherwise give notice of [substituted, non-emergency] names [of proposed election judges] submitted to the court. There was thereby no opportunity for any person to object to names later confirmed by the court. Defendants acknowledged such action (Exhibit B attached to and made a part of this complaint). Any such designation, as acknowledged by defendants were in violation of the requirement that defendants submit names from the lists submitted and violates the precinct designation requirement."

If proved, this failure to publish the substituted, non-emergency names of proposed election judges prior to a hearing in the Circuit Court of Cook County would amount to a plain violation of § 14–5 of the statute. Failure of the Election Board to follow these notice procedures, which are clearly designed to insure fair elections, is a failure to afford due process of laws designed to protect the federal right that each voter's rights be effective. Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L. Ed.2d 1. Since the presence of LEAP judges would serve as a balancing process to insure the effectiveness of voters' rights, both plaintiffs, as voters in the forthcoming November 1972 election,* have alleged sufficient injury to state a claim under Section 1983 of the Civil Rights Act (42 U.S.C. § 1983). Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24.

In my view, the judgment below should be affirmed on abstention grounds except as to the alleged failure to comply with the notice procedures in § 14–5. As to that ground, the judgment should be reversed and remanded for further proceedings.

---

\* In addition to being a voter, plaintiff Carey is a candidate in that election, so that unfairness in the election process could also injure him *qua* candidate. Cf. Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1971).