**Michael L. SHAKMAN and Paul M. Lurie, Plaintiffs-Appellants,**

**v.**

**The DEMOCRATIC ORGANIZATION OF COOK COUNTY et al., Defendants-Appellees.**

**No. 18043.**

United States Court of Appeals, Seventh Circuit.

Oct. 23, 1970.

Rehearings Denied Dec. 18, 1970.

Robert Plotkin, C. Richard Johnson, Roger R. Fross, Chicago, Ill., for plaintiffs-appellants.

Raymond F. Simon, Corp. Counsel, Marvin E. Aspen, Edward V. Hanrahan, State's Atty., Daniel P. Coman, Atty., George J. Schaller, Chicago, Ill., for defendants-appellees City of Chicago, Richard J. Daley and Marshall Korshak; Edmund Hatfield, Daniel Pascale, Asst. Corp. Counsel, of counsel.

Before SWYGERT, Chief Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

FAIRCHILD, Circuit Judge.

This action challenges the use of patronage in the city of Chicago and Cook County in a manner which allegedly puts at an electoral disadvantage those who desire the election of candidates in opposition to those in power. In briefest outline, plaintiffs allege that officers of the city and county require city and county employees, as a condition of holding their jobs and drawing their salaries from the public treasuries, to furnish votes, campaign work, and money to elect candidates chosen by the regular democratic organization, and that this practice makes more difficult and often prevents the election of other candidates.

The district court dismissed the complaint and plaintiffs appealed.

The two plaintiffs allege that they are residents, voters, and taxpayers within the 24th state senatorial district, within the city of Chicago and Cook County. Plaintiff Shakman was a candidate, not endorsed by any party, at the election held November 18, 1969 for delegates to the Illinois constitutional convention. Plaintiff Lurie supported Shakman. This action was commenced about a month before the election. Although the particular election is over, the practices challenged are allegedly of a continuing nature, and the case is not moot.[1]

Plaintiffs set out six counts, so as separately to seek redress for deprivation of constitutional rights on behalf of (1) Shakman, and all other independent candidates, including those at future elections, as candidates; (2) both plaintiffs, and all others similarly situated, as voters; (3) both plaintiffs, and all others similarly situated, as taxpayers; and separately to predicate each such claim upon an averment of conspiracy to effect such deprivation.

The defendants include the mayor and treasurer of the city, the president of the board of county commissioners, the county assessor, the county clerk, and the clerk of circuit court. There has been

1. Cf. Moore v. Ogilvie (1969), 394 U.S. 814, 816, 89 S.Ct. 1493, 23 L.Ed.2d 1.

no argument that these defendants are not acting under color of law in making the appointments which allegedly implement the patronage system under attack. The democratic county central committee, which is a statutory party organ, several of its members, several aldermen and county commissioners, and a not for profit corporation known as The Democratic Organization of Cook County are additional defendants. It is alleged that all conspired to deprive plaintiffs of rights.

Jurisdiction is claimed under 28 U.S. C. § 1331, of a controversy arising under the constitution, and a jurisdictional amount is alleged. Jurisdiction is also claimed under 28 U.S.C. § 1343(3) of an action to redress the deprivation under color of state law, of rights secured by the constitution. Assuming justiciability, the existence of jurisdiction, at least under § 1343(3), is clear.[2]

The complaint defines a democratic patronage employee (DPE) as a person employed by the city or county on the basis of his political support of the county democratic organization, of which the mayor is president, and who is not protected by law against arbitrary discharge. It is alleged that there are between 8,000 and 30,000 DPEs; that many are hired on a basis where one's employment must be renewed each several months if it is to continue; that most DPEs are required, as a condition of keeping their jobs, or in order to escape discipline, to contribute money to the county democratic organization, or its affiliates, or endorse candidates, and to do political work for such organizations and candidates. Some of such allegedly coerced work is done during regular working hours and some on the DPE's own time. The defendants, it is alleged, coerce DPEs by this means to give votes, political support, campaign work, and money to candidates endorsed by the organization and its affiliates.

Plaintiffs ask, among other things, for a declaration that the practices of defendants violate constitutional and other federal rights of candidates, voters, and taxpayers of Chicago, an injunction against those practices, and damages.

■ One of the reasons given by the district court for dismissing the complaint is that plaintiffs lack standing to seek redress for the injury to the rights of the DPEs resulting from the alleged coercion. Plaintiffs point out that there are decisions permitting vicarious vindication of constitutional rights for reasons of policy.[3] But here, in any event, plaintiffs are seeking redress for injuries to their own interests and the interests of others similarly situated. Assuming the truth of plaintiffs' averments, and assuming that interests of theirs which are allegedly injured are rights, privileges, or immunities secured by the federal constitution, their standing to bring a § 1983 or § 1985 action is apparent.[4]

Plaintiffs also aver that they are taxpayers, challenging the misuse of tax funds in that DPEs are allegedly required, as a condition of continuing to receive their compensation out of public money, to vote for and assist candidates selected by defendants and opposed by plaintiffs. Plaintiffs are asserting that the practice causes injury to their interests as candidates and voters, and if those interests are constitutionally protected from the type of injury alleged, it will be unnecessary to decide whether their taxpayer interest alone would give them standing.[5]

■ The other reason given by the district court for dismissing the complaint is that it is conclusory. The court

2. See Bell v. Hood (1946), 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Baker v. Carr (1962), 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663.

3. See examples cited in Smith v. Board of Education of Morrilton Sch. Dist. No. 32 (8th Cir., 1966), 365 F.2d 770, 776.

4. Baker v. Carr (1962), 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663.

5. See Doremus v. Board of Education (1952), 342 U.S. 429, 434, 72 S.Ct. 394, 96 L.Ed. 475.

pointed to a number of assertions in the portion of the complaint where the pleader attempted to describe the impact of the practice complained of on plaintiffs' right of association, right to express one's self as a candidate, right to vote effectively, and the like. The district court did not agree, and we do not, with much of plaintiffs' expression of the legal analysis of such impact. Most § 1983 complaints contain material in this area, and we agree that a pleader's abstract assertion that one or another constitutional right has been violated does not require the court to decide that a claim has been adequately stated.

■ But the averments concerning the operation of the patronage system and the disadvantage it causes to candidates and voters who attempt to use the election process to change the direction of government are factual and give adequate fair notice of the claim asserted.[6]

We consider the significant questions, unanswered to this point, to be whether these disadvantages to the interests of candidates and voters amount to deprivation of any rights, privileges, or immunities secured by the constitution, and whether for any reason this area of controversy must be deemed nonjusticiable.

It is clear that at least some aspect of the interests of candidates in an equal chance and of the interests of voters in having an equally effective voice are rights secured from state action by the equal protection clause of the fourteenth amendment.

■ The interests of candidates in official treatment free from intentional or purposeful discrimination are entitled to constitutional protection.[7] "Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights." [8]

■ The equal protection clause secures from invidious official discrimination the voter's interest in a voice in government of equal effectiveness with other voters.[9]

■ We acknowledge that the decisions just referred to involved mechanical aspects of the election process: e. g., the right to cast a vote, a candidate's place on the ballot, and equal size in districts entitled to a representative. The interest in an equal chance and an equal voice is allegedly impaired in the case before us by the misuse of official power over public employees so as to create a substantial, perhaps massive, political effort in favor of the ins and against the outs. We conclude that these interests are entitled to constitutional protection from injury of the nature alleged as well as from injury resulting from inequality in election procedure.

We see no ground upon which to decide that the controversy suggested by plaintiffs' claims is nonjusticiable.

"In the instance of non-justiciability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for

6. See 2A Moore, Federal Practice ¶ 8.13, pp. 1695–1700.

7. Snowden v. Hughes (1944), 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497. See Weisberg v. Powell (7th Cir., 1969), 417 F.2d 388, 392.

8. 321 U.S. 11, 64 S.Ct. at 402.

9. Baker v. Carr (1962), 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663; Gray v. Sanders (1963), 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821; Reynolds v. Sims (1964), 377 U.S. 533, 565, 84 S.Ct. 1362, 12 L.Ed. 2d 506; Carrington v. Rash (1965), 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675; Williams v. Rhodes (1968), 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24; Avery v. Midland County (1968), 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45; Moore v. Ogilvie (1969), 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1; Hadley v. Junior College District (1970), 397 U.S. 50, 90 S.Ct. 791, 25 L.Ed.2d 45.

the right asserted can be judicially molded."[10]

\* \* \* \* \* \*

"Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."[11]

One may foresee that in the areas of proof, and devising relief if the claims be proved, care will be required in order to distinguish between compelled and voluntary political support by public employees. Except to the extent some statute validly restricts political expression or activity by public employees, such individuals enjoy the same right of political association and expression, on their own time, as anyone else.

We do not view possible difficulties of the sort just mentioned as demonstrating "a lack of judicially discoverable and manageable standards for resolving" the case or as requiring, at the pleading stage, a decision that plaintiffs' claim is not justiciable.

Defendants rely upon the eighth circuit decision in Irish v. Democratic Farmer-Labor Party of Minnesota.[12] There the court held that there was nothing of constitutional significance in an alleged malapportionment of representation in the state convention of a political party. The court went on to say that the case presented a nonjusticiable political question. We think that the nature of the problem there, with respect to the internal operations of a political party, is sufficiently different from the problem presented in the complaint before us, that Irish offers no guidance here. Because of the difference, it is unnecessary to decide whether we agree with the reasoning of Irish.

We note the argument, made by several defendants that the complaint is fatally defective for failure to join as defendant the Republican Party. We find no merit in the proposition.

Plaintiffs have asked that in addition to reversing the order of dismissal we direct the district court to grant a preliminary injunction. We deem it inappropriate, however, at this time, to preempt the district court's discretion with respect to a preliminary injunction.

The judgment is reversed and the cause remanded for further proceedings.

SWYGERT, Chief Judge (dissenting).

I would sustain the district court's dismissal of the complaint, but on a ground different from those assigned by the district judge. In my opinion this case presents a nonjusticiable controversy in the sense that it involves a "political question"—one that should be dealt with by the state legislature and not by the courts.

A distinction should be drawn in this area between the rights of voters and candidates for public office to be given equal treatment by the state in the "mechanical aspects of the election process," to use Judge Fairchild's apt phrase, and remedies for alleged abuses of the persuasion or electioneering aspects of the process. For example, in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), it was held that the citizens of a state suffer a "debasement of their votes" and thereby a denial of equal

---

10. Baker v. Carr (1962), 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663.

11. Ibid. p. 217, 82 S.Ct. at p. 710.

12. (8th Cir., 1968), 399 F.2d 119.

protection of the laws when the state legislature refuses or fails to allocate its legislative representation on an equal basis among the voters of the state. In Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1968), the Supreme Court held that a state may not discriminate against the residents of the more populous sections of a state in favor of the less populous by requiring a rigid, arbitrary number of signatures from each county on petitions for independent candidates for political office. In Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969), this court had before it a case concerning an arbitrary and discriminatory procedure adopted by the Illinois Electoral Board in the placement on the ballot of candidates to a state constitutional convention. All three cases, which are illustrative of the decisions in this area, dealt with procedures enacted by state legislatures relating to the democratic elective process directed to attain representative government.

In the instant case we are not asked to apply the equal protection test to a legislative enactment governing the elective process or even to a deviation from such an enactment by those statutorily charged to carry out its mandate. Rather, we are asked to go one step further and hold that the conduct of a public official is constitutionally proscribed when he allegedly requires employees whom he appoints and can summarily discharge to contribute money and "public" time to the candidacy of those favored by him.

In Baker v. Carr, the Supreme Court recognized that there may be areas of activity relating to the elective process that are not justiciable because of the "inappropriateness of the subject matter for judicial consideration." The Court then set forth the applicable test: "In the instance of nonjusticiability, consideration of the cause is not wholly and immediately foreclosed; rather, the Court's inquiry necessarily proceeds to the point of deciding whether the duty asserted can be judicially identified and its breach judicially determined, and whether protection for the right asserted can be judicially molded." 369 U.S. at 198, 82 S.Ct. at 700. When this test is applied to the claims made by plaintiffs, it is apparent that the instant case should be classified as nonjusticiable. Assuming proof of the claims, it is not difficult to contemplate the problems facing the district court in molding a proper remedy and, perhaps more important, with its enforcement.

I agree with the observation made by defendants that the relief requested is tantamount to asking the court to enlarge the Federal Hatch Act, 5 U.S.C. §§ 7321 et seq., to encompass the political activity of local government employees. Whether coverage should be extended to such employees as a matter of public policy is not the question. The question is whether a federal court should attempt to formulate "judicially discoverable and manageable standards," [1] relating to such activity and whether it should be called on to mold a piecemeal remedy by injunctive decree.

In my judgment this case presents issues of which the courts should not take cognizance. It is a matter that should be left to the legislature.

---

1. Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).