Ronald C. **SMITH** and John Chester, Plaintiffs-Appellants,

v.

Robert **CHERRY** et al., Defendants-Appellees.

No. 73–1330.

United States Court of Appeals, Seventh Circuit.

Heard Sept. 26, 1973.

Decided Nov. 27, 1973.

Rehearing Denied Jan. 4, 1974.

---

Bernard Weisberg, James P. Chapman, Chicago, Ill., for plaintiffs-appellants.

Daniel Nagle, Aldus S. Mitchell, Claude B. Kahn, William J. Scott, Chicago, Ill., for defendants-appellees.

Before O'SULLIVAN, Senior Circuit Judge,* and KILEY and CUMMINGS, Circuit Judges.

PER CURIAM.

This appeal is from the district court's judgment granting defendants' motions to dismiss the first amended complaint, as amended, for failure to state a claim upon which relief can be granted. That pleading, the allegations of which must presently be taken as true, discloses the following:

Plaintiff Ronald C. Smith was a candidate in the March 21, 1972, Democratic primary for the office of state senator from the 12th Illinois Senatorial District. The other plaintiff, John Chester, was a duly qualified voter in that District and voted in that primary.

---

* Senior Circuit Judge Clifford O'Sullivan of the Sixth Circuit is sitting by designation.

The present 12th Senatorial District was created through redistricting in 1971. Defendant Robert Cherry was the incumbent state senator in that District and was on the ballot as Smith's opponent in the Democratic primary. Cherry won the primary by a margin of 1,953 votes, receiving 53% of the total vote cast.

Since November 1970, defendant Ben Palmer had been the Democratic state senator from the 13th Senatorial District. Because of the 1971 redistricting, his residence was located in the new 12th District. He did not seek renomination in the 1972 primary election but supported Cherry.

Upon plaintiffs' information and belief, Cherry did not intend to run for state senator in the November 7, 1972, election. Palmer and the five defendant Democratic Ward Committeemen (including Cherry) comprising the statutory 12th Senatorial Committee (Ill.Rev. Stats.1971, Ch. 46, § 8–5) allegedly conspired to defeat Smith by having Cherry run against him in the Democratic primary as a sham or stand-in candidate. On September 21, 1972, Cherry withdrew his candidacy, so that the defendant Senatorial Committeemen could designate Palmer as the Democratic candidate for state senator from the 12th District in the November 7, 1972 election, as permitted by Ill.Rev.Stats.1971, Ch. 46, § 8–17. At the November 7 election, Palmer defeated his Republican opponent.

According to the plaintiffs, Chester and all other voters participating in the Democratic primary for the 12th Senatorial District were denied their right to vote as protected by the First and Fourteenth Amendments. Defendants' actions were depicted as "a step in the scheme of the said defendants to nullify the right of the voters to decide who would be nominated, to render the primary election a sham, and arrogate to the defendant Committeemen the selection of the nominee." Smith was said to have been deprived of his freedom to participate in the primary "without unlawful interference by the defendant Committeemen acting under color of law," thus violating the First and Fourteenth Amendments.

Federal jurisdiction was invoked under Section 1983 of the Civil Rights Act (42 U.S.C. § 1983) and the First and Fourteenth Amendments. Plaintiffs requested declaratory relief, including a declaration that the office of state senator of the 12th District was vacant. In the alternative, the district court was requested to order an early special primary and general election for that office.

Originally the district court denied the defendants' motions to dismiss, stating:

"But what they [plaintiffs] are alleging, in effect, is that there was a fraud made on the voters and that, in effect, Mr. Cherry was not really the candidate. I have to take the allegations of the complaint as true. I think it is the same as putting * * * a fictitious person on the ballot, if you are to assume that what is alleged there is factual. I do not know whether that can be proved or not, but it does seem to me that that is, at least, prima facie violation of the Federal statutes that have been [orally] cited."[1]

Subsequently the defendants filed answers and the various parties took depositions. Defendants were granted leave to renew their motions to dismiss, and those motions were granted in an unreported decision and order of the district court holding that no impermissible discrimination had been shown. The court also expressed its reluctance to require a special election to attempt to unwind the "tangled skein presented by this case" but did not rely on the abstention doctrine.

While we share the district court's hesitancy to inject the federal courts into local elections, in our view plaintiffs have sufficiently alleged deprivation of their rights under the Con-

---

1. They were 42 U.S.C. §§ 1983 and 1985, 28 U.S.C. § 1343 and 42 U.S.C. § 1971.

stitution and Civil Rights Act. Conse-- quently, the judgment must be reversed and the cause remanded for further proceedings.

*Abstention*

 In this Court, the defendants' briefs have not addressed the question of abstention in any detail.[2] Nevertheless, in the district court, the defendant Committeemen alternatively requested the district court to abstain from exercising jurisdiction on the ground that the action involved "solely a matter of Illinois election laws applied to a local Illinois election." Therefore, it is appropriate to discuss abstention. Plaintiffs are not seeking a construction of Ill. Rev.Stats.1971, Ch. 46, § 8–17, nor is its constitutionality challenged. The gravamen of their claim is that the statute is being administered in an unconstitutional way.

The statute is clear on its face and has been construed literally by the highest state court. Bergeson v. Mullinix, 399 Ill. 470, 479–480, 78 N.E.2d 297 (1948). Thus there is no basis for abstention in hopes that the statute can be construed so as to render it unnessary to decide the federal issues. See Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515; Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50. Nor would abstention avoid interference with a complex state program. If the plaintiffs ultimately prevail, the remedy they seek would permit the State to go ahead under the usual state procedures for special elections. Abstention seems particularly inappropriate here where the case will become moot upon the expiration of Senator Palmer's term. The delays inherent in abstention could therefore abrogate the remedy sought. See Pike v. Bruce Church, Inc., 397 U.S. 137, 140 n. 3, 90 S.Ct. 844, 25 L.Ed.2d 174; Baggett v. Bullitt, 377 U.S. 360, 378–379, 84 S.Ct. 1316, 12 L.Ed.2d 377; Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S.

324, 328–329, 84 S.Ct. 1293, 12 L.Ed.2d 350.

 The fact that this controversy involves political matters is an insufficient reason for abstaining. Brown v. Chote, 411 U.S. 452, 93 S.Ct. 1732, 36 L.Ed.2d 420; Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1; Williams v. Rhodes, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24; Shakman v. Democratic Organization, 435 F.2d 267 (7th Cir. 1970); Pontikes v. Kusper, 345 F.Supp. 1104, 1107 (N.D.Ill.1972, three-judge court), affirmed, 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260; Pell, "Abstention —A Primrose Path By Any Other Name," 21 DePaul L.Rev. 926, 967 (1972). Nor does it matter that only state offices are affected. Weisberg v. Powell, 417 F.2d 388 (7th Cir. 1969); Moore v. Kusper, 465 F.2d 256 (7th Cir. 1972); Briscoe v. Kusper, 435 F.2d 1046 (7th Cir. 1970); Weiss v. Duberstein, 445 F.2d 1297 (2d Cir. 1971), certiorari denied sub nom. Lefkowitz v. Weiss, 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 130. Only state elections were involved in the state legislative reapportionment cases, and of course abstention has not been considered appropriate in them. Mahan v. Howell, 410 U.S. 315, 93 S.Ct. 979, 35 L.Ed.2d 320; 67th Minnesota State Senate v. Beens, 406 U.S. 187, 92 S.Ct. 1477, 32 L.Ed.2d 1; Ely v. Klahr, 403 U.S. 108, 91 S.Ct. 1803, 29 L.Ed.2d 352; Kilgarlin v. Hill, 386 U.S. 120, 87 S.Ct. 820, 17 L.Ed.2d 771; Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501; Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376; Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401; Lucas v. 44th General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632; Roman v. Sincock, 377 U. S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; WMCA Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Rey-

---

2. Defendant Committeemen merely rely on a concurring opinion of Justice Douglas in Jackson v. Ogilvie, 401 U.S. 904, 91 S.Ct.

642, 27 L.Ed.2d 803. The briefs of the other defendants cite no abstention authorities.

nolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

In O'Brien v. Brown, 409 U.S. 1, 4, n. 1, 92 S.Ct. 2718, 2720, 34 L.Ed.2d 1, the Supreme Court most recently pointed out that federal intervention is appropriate where "claims are made that injury arises from an invidious discrimination * * * in a primary contest within a single State." That is the nub of the present case. The Court specifically mentioned only racial discrimination, but there is no reason to believe that other forms of forbidden discrimination should be treated differently for abstention purposes. Under these authorities it is apparent that the district court is obligated to resolve whether this Illinois statute has been administered in violation of the First and Fourteenth Amendments and § 1983 of the Civil Rights Act.

*Sufficiency of Complaint*

In this part of the opinion, we again take the well-pleaded allegations of the amended complaint as true. Plaintiffs claim that all voters in the 12th District, regardless of which candidate they preferred, were denied the right to vote because the Democratic condidate was not actually chosen in the primary but was instead chosen by the conspiring Committeemen. Put another way, Cherry's name on the ballot was said to be a sham intended to deceive the voters. Those who thought they were voting for Cherry were as a practical matter voting for whomever the Committeemen might thereafter select; in effect, votes intended for Cherry were really votes for Palmer. This deception on the face of the ballot clearly debased the rights of all voters in the election. Such an abridgment of the right to vote is impermissible and evinces the sufficiency of this complaint. Moore v. Ogilvie, 394 U.S. 814, 818, 89 S.Ct. 1493, 23 L.Ed.2d 1; Reynolds v. Sims, 377 U.S. 533, 555–556, 84 S.Ct. 1362, 12 L.Ed.2d 506; Williams v. Rhodes, 393 U.S. 23, 30–31, 89 S.Ct. 5, 21 L.Ed.2d 24; Shakman v. Democratic Organization, 435 F.2d 267, 270 (7th Cir. 1970).

Plaintiffs also claim that some voters were denied equal protection of the laws. As we understand plaintiffs' equal protection theory, the deliberate discrimination involved three groups of voters. Other groups of voters were also affected, but the conspiracy was aimed primarily at the following three groups:

| Label for Group | Operational Definition of Group |
|---|---|
| 1. Organization Voters (INS) | Voters who would vote for either Cherry or Palmer |
| 2. Swing Voters | Voters who would vote for Cherry but not for Palmer |
| 3. Smith Voters (OUTS) | Voters who would vote for Smith as against either Cherry or Palmer |

Organization Voters and Swing Voters were both "tricked" into voting for Palmer when they thought they were voting for Cherry. But the impact of this deception fell unequally on the two groups of voters, because the Organization Voters would have voted for Palmer anyway, whereas the Swing Voters would have voted against him.

By deceiving the Swing Voters, the conspiracy allegedly enabled Palmer to win an election he could not have won had he openly been on the ballot. The conspiracy defeated Smith, who allegedly would have won an honest election against Palmer. Thus the conspiracy worked "in favor of the ins and against the outs." Shakman v. Democratic Organization, 435 F.2d 267, 270 (7th Cir. 1970). Swing Voters and Smith Voters were "denied an equal opportunity to win votes" (Williams v. Rhodes, 393 U.S. 23, 31, 89 S.Ct. 5,) and suffered an unequal burden on their right "to cast their votes effectively." *Id.* at 30, 89 S.Ct. 11. The Smith Voters were denied an equal opportunity "to associate for the advancement of political beliefs" with the Swing Voters. *Id.* at 30, 89 S.Ct. 10. These claims of deliberate discrimination against Swing Voters and Smith Voters stated a cause of action for violation of rights protected by the

equal protection clause. White v. Snear, 313 F.Supp. 1100, 1104 (E.D.Pa.1970).

Other groups of voters were affected by the conspiracy. Presumably there were some voters who would have voted for Palmer but not for Cherry. Taking as true the allegation of the complaint that only Cherry had a reasonable chance to defeat Smith, this group of voters must have been small. Similarly, there must have been voters who had no preference and did not vote in what they thought was a Cherry-Smith race, but would have voted in an open Palmer-Smith race. Doubtless there are other groups of voters with different combinations of preferences. We find it unnecessary at this stage to resolve the possible claims of all possible groups of voters incidentally affected by the discrimination aimed at the Swing Voters and the Smith Voters.

■ In reversing itself and denying relief to plaintiffs, the district court relied primarily on Snowden v. Hughes, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497. There, however, official action discriminated between the candidates with the highest and second highest number of votes, and there was no allegation of improper motive. As the district judge noted, *Snowden* has been "eroded in subsequent voters' rights and election decisions." But even *Snowden* acknowledged that relief under the equal protection clause is appropriate where, as here, plaintiffs have shown a discriminatory design favoring a particular group against others. As Chief Justice Stone stated in language that we followed in Weisberg v. Powell, 417 F.2d 388, 392 (7th Cir. 1969):

> "The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown

to be present in it an element of intentional or purposeful discrimination. This * * * may be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another * * *."

"Where discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights." 321 U.S. at 8, 11, 64 S.Ct. at 402.

■■ Similarly too, it is clear that plaintiff Smith had a valid cause of action. As we stated in *Shakman, supra,* "The interests of candidates in official treatment free from intentional or purposeful discrimination are entitled to constitutional protection." 435 F.2d at 270. In the present state of the record, at least until discovery has been completed, it is impossible to determine the merits of this controversy. It may be that after the remaining discovery has taken place or affidavits filed, the district court might be able to resolve the case by summary judgment. Otherwise, of course, a trial will be necessary. If the plaintiffs prove an agreement that Cherry would be a stand-in candidate, and show a reasonable possibility that Cherry's sham candidacy affected the outcome of the election, then the district court should order new primary and general elections.[3] Because the senatorial term in question has already commenced, expedited treatment must be accorded below. Until the district court determines the relief, if any, to be awarded plaintiffs, none of the present defendants should be dismissed, but Michael J. Howlett, John H. Hanly, and Charles A. Coleman should be substituted for their predecessors in office. Rule 25(d) of Federal Rules of Civil Procedure.

Reversed and remanded for further proceedings.

---

3. A special election was ordered by this very district judge in Cousins v. City Council, 361 F.Supp. 530 (N.D.Ill.1973), after our remand for new trial in 466 F.2d 830, certiorari denied, 409 U.S. 893, 93 S.Ct. 85, 34 L. Ed.2d 151. New elections were ordered in Hadnott v. Amos, 394 U.S. 358, 367, 89 S. Ct. 1101, 22 L.Ed.2d 336, and in Mann v. Davis, 238 F.Supp. 458 (E.D.Va.1964), affirmed, 379 U.S. 694, 85 S.Ct. 713, 13 L.Ed. 2d 698. New elections were envisioned as a possibility in Skolnick v. Illinois State Electoral Board, 307 F.Supp. 691 (N.D.Ill.1969, three-judge court).