**Michael J. HOWLETT et al., Plaintiffs,**

v.

**Daniel A. WALKER et al., Defendants.**

**No. 76 C 1046.**

United States District Court,
N. D. Illinois, E. D.

May 19, 1976.

Don H. Reuben and Thomas F. Ging, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for plaintiffs.

Thomas R. Meites, Chicago, Ill., for defendant Tsoumas.

Kenneth F. Levin, Beatty & Levin, Chicago, Ill., for defendant Walker.

Robert A. Creamer, Keck, Cushman, Mahin & Cate, Chicago, Ill., for defendants.

## DECISION ON DEFENDANTS' MOTIONS TO DISMISS

McMILLEN, District Judge.

The remaining defendants in this case, consisting of the Governor of the State of Illinois, the Director of the Illinois Department of Financial Institutions, and the Director's individual appointee James T. Otis have filed separate motions to dismiss the complaint for failure to state a claim upon which relief can be granted and for other similar grounds. Our reading of the complaint in the light of the authorities upon which it is apparently based, and the traditional reluctance of Federal courts to interfere with the normal processes of State government unless clearly necessary in order to protect Federal constitutional rights, satisfies us that the motions of the defendants should be granted.

Allegedly the defendants entered into a conspiracy in February of 1976 to cause an investigation of certain loans made by Nationwide Acceptance Corp. to the plaintiff Michael J. Howlett. He alleges that he is a "political opponent" of Governor Walker but, more appropriately for the purposes of the investigation, he is also Secretary of State of Illinois. The defendant Tsoumas admittedly had the authority as Director of the Illinois Department of Financial Institutions to institute such an investigation of a lending agency which was licensed by him to do business in Illinois. Pursuant to his statutory authority, therefore, Tsoumas appointed the defendant James T. Otis to investigate the legality of these loans. According to his uncontested affidavit, Otis is merely conducting a private inquiry with no open hearings and will make a confidential report to Tsoumas without releasing any documents publicly.

The plaintiffs have voluntarily dismissed their complaint as to the Chairman and members of the Illinois Racing Board, conceding that they have not interfered with any of the plaintiffs' constitutional rights or otherwise acted unfairly toward them. We assume from this that these former defendants were not coconspirators with the remaining defendants.

At about the same time when Tsoumas appointed Otis to make his investigation, he and Governor Walker allegedly released misleading and false publicity concerning the loans made to plaintiff Howlett who was then engaged in a political contest with Walker for the Democratic nomination as Governor of Illinois. Although this publicity was released in the closing weeks of the 1976 primary campaign, the plaintiff Howlett nevertheless won the nomination. He must still run against the Republican nominee in November 1976, however, and his political concerns therefore are not moot.

Plaintiffs allege that the appointment of Otis violates their rights under 42 U.S.C. §§ 1983 and 1985, the Fourteenth Amendment to the Constitution of the United States, and Article I of the Constitution of the State of Illinois. They seek an injunction requiring the defendants to "recuse themselves" from this investigation and to have it conducted by "independent fact finders of unquestioned impartiality". In effect, plaintiffs seek to have this court either conduct the investigation by a public hearing or to appoint some person to make an investigation in lieu of Otis, since he is a political ally of and contributor to Governor Walker. The matter would then presumably proceed in much the same manner as though Mr. Otis had conducted it. After a report is made to the Director of Financial Institutions, it is this official who may then conduct an "adjudicatory hearing" to determine whether the license of Nationwide Acceptance Corp. should be revoked. Ill. Rev.Stat. (1975), Ch. 74, §§ 27 and 59.

■ A fair hearing, and probably a fair investigation, is an element of due process under the Fourteenth Amendment to our Constitution. However, the degree of bias which must be alleged and found to exist in order to usurp the fact-finding function of a public official must border upon fraud or at least a pecuniary interest in the outcome. *Gibson et al. v. Berryhill et al.,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). In the case of *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), which has

been avoided in the memoranda of all the parties, the Supreme Court vacated an injunction which had been entered by a three-judge Federal court against the members of the Wisconsin Medical Examining Board to preclude their suspending the license of a physician who was an alleged abortionist. The three-judge court had enjoined the proceeding because the investigating and adjudicating functions were performed by the same persons, much the same situation as in the case at bar where the investigator is allegedly a mere chore-boy for the defendants. The Supreme Court pointed out that it has frequently approved such a joinder of functions, most recently in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It then observed at 421 U.S. pp. 46–47, 95 S.Ct. p. 1464:

> . . . Not only is a biased decision-maker constitutionally unacceptable but "our system of law has always endeavored to prevent even the probability of unfairness." *Murchison*, supra [349 U.S. 133 at 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)]; cf. *Tumey v. Ohio*, 273 U.S. 510, 532 [47 S.Ct. 437, 444, 71 L.Ed. 749] (1927). In pursuit of this end, various situations have been identified in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable. Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him. [Footnotes citing cases are omitted].

The authorities relied upon by the plaintiffs fall primarily into the two categories identified by the foregoing statement. *Tumey v. Ohio*, for example, involved the impartiality of a magistrate because of his pecuniary interest in the outcome of the matters being decided by him and not because of any political loyalty or even contribution to a particular officeholder. Of course Otis is not the adjudicator or even the ultimate factfinder. Nor is he alleged to have contributed any funds to Director

Tsoumas who appointed him, but his contribution and loyalty are allegedly to the Governor who appointed Tsoumas.

To overcome this lack of identity between the appointee Otis and the Governor as the interested manipulator, plaintiffs presumably rely upon the theory of a conspiracy under § 1985. This section, and specifically the third paragraph thereof, are traditionally applied to discrimination against members of a defined class. *Lesser v. Braniff Airways Inc.*, 518 F.2d 538 (7th Cir. 1975); see also *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944). Plaintiffs simply have not alleged that they are members of any class being discriminated against within the meaning of § 1985(3).

One object of this conspiracy, in addition to appointing the allegedly biased Otis, is apparently to make false and defamatory public statements concerning Howlett, the candidate. Therefore, a second prong of the complaint is basically an attempt to prevent these defendants from making public statements. Plaintiffs are well aware that we cannot easily enjoin this type of activity, because of such cases as *Organization For a Better Austin v. Keefe*, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971), and *New York Times v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), and they do not seek such relief. Nevertheless, the alleged defamatory statements of the defendants are in some way sought to be assuaged by terminating the defendants' participation in the investigation of Nationwide Acceptance Corp.

■ We believe that the recent case of *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405, 44 U.S.L.W. 4337 (1976) effectively eliminates statements by public officials from the protection of § 1983. Since plaintiff Howlett is suing as a political candidate and not as an incumbent Secretary of State, he cannot be said to be subject to deprivation of a "right or status" without due process within the meaning of that case. Neither his public reputation nor his right to privacy is protected by § 1983 under *Paul v. Davis*.

■ Nor do we see the applicability of *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), relied upon by the plaintiffs in support of their argument that the alleged conspiracy deprives them of equal protection under the Fourteenth Amendment. Defendants' action herein was not a selective one, as was the prosecution of *Falk*, since Nationwide Acceptance Corp. is not alleged to be selectively investigated. Howlett was indeed the only candidate running against Walker in the primary, but this circumstance negates the possibility that he was being treated differently than others.

Another equal protection case relied on by plaintiffs is *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir. 1970), cert. den. 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1970). That case is similar to a taxpayer's suit for waste or misapplication of public funds and does not involve the right of a political candidate to run for office without harassment or conspiratorial interference with his candidacy. *Weisberg v. Powell*, 417 F.2d 388 (7th Cir. 1969) involved blatant discrimination between competing candidates, a violation of equal protection, but as pointed out above, plaintiffs are not being treated differently than any other candidate.

*Shakman* and *Weisberg* both involved candidates whose supporters were allegedly being deprived of the fair exercise of their voting franchise. The case at bar makes no such claim. It merely seeks the replacement of one investigator by another so that the true facts might be uncovered. The distinction between these two sets of circumstances seems to us to be one of substance, particularly in view of the fact that any further interference with the plaintiffs' political fortunes in the case at bar by the defendants is prospective and speculative, at least until Mr. Otis completes his investigation.

In short, to the extent that plaintiffs complain about anything which has transpired up to this time, they are not entitled to an injunction. They seek no more, hence their complaint must fall. What may happen in the future, after Mr. Otis makes his confidential report to the Director and after the Director releases the report or decides to hold an adjudicatory proceeding, is purely speculative and not a proper subject for an injunction. The best, if not the only, way to determine whether Mr. Otis' investigation is fair is to let it be made and thereafter to examine the result, if Tsoumas decides to proceed further.

■ Even if injunctive relief by the Federal court were permissible and even if it were possible to find that paragon of political impartiality to replace Mr. Otis as an investigator, the proper action for this court to take under all the circumstances of this case, in our opinion, would be to abstain from interfering in the execution of statutory powers by a State official, even though he is allegedly acting in a conspiracy with a political opponent of the plaintiffs. See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Rizzo et al. v. Good et al.*, 423 U.S. 362, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976). This case was originally filed in the State court, the complaint alleges, *inter alia*, a violation of the State constitution, and we are not impressed by the defendants' apparent distrust of the impartiality of the entire State judiciary. Cf. *Withrow v. Larkin*, supra, pp. 85–86.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the motions of the defendants to dismiss the complaint are granted and it is dismissed.