**Harold SMITH, Plaintiff-Appellant,**

v.

**CITY OF CHICAGO, et al., Defendants-Appellees.**

No. 84–2858.

United States Court of Appeals, Seventh Circuit.

Argued June 18, 1985.

Decided July 29, 1985.

Stephen J. Senderowitz, Troelstrup, Dolkart, Patterson & Senderowitz, Chicago, Ill., for plaintiff-appellant.

James D. Montgomery, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, Chief Judge, and BAUER and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Demoted from bricklayer to laborer in November 1982, discharged as a laborer in June 1984 because of a reduction in force, Harold Smith sought judicial relief in August 1984. Smith's petition contended that the demotion came in retaliation for his support of a candidate for Mayor and so violated the *Shakman* consent decree. The *Shakman* decree, entered in 1972 and modified several times since, controls the use of political patronage in the City's employment practices. See *Tomczak v. City of Chicago*, 765 F.2d 633 (7th Cir.1985), which describes the history and scope of the decree.

Smith contends that but for the demotion in 1982 he would not have been let go in 1984. (Smith does not contend that his discharge is an independent violation of the decree.) The district court concluded that Smith had waited too long to seek relief. Twenty-one months passed between the demotion and the commencement of this proceeding. The district court thought that Smith's reason for waiting—his fear of further retaliation against employees who file suits against the City—was a poor one because "it is such retribution that actions under *Shakman* are aimed at eliminating." The court held the claim barred by laches in light of "the harm presumably suffered by the City, a governmental employer," during the delay, 591 F.Supp. 635.

## I

This court reviews findings of laches under a highly deferential standard. We reverse only if the losing party shows a "clear abuse of discretion." *Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 932 (7th Cir.1984). Although the review is deferential, laches nonetheless presents challenging questions for all concerned. Laches is a question of degree. Laches may be invoked only when unreasonable delay and prejudice to the other party coincide. *Lingenfelter v. Keystone Consolidated Industries*, 691 F.2d 339 (7th Cir.1982). How much delay is "unreasonable"? Often the parties disagree about whether the plaintiff took other steps that put the defendant on notice; here, for example, Smith protested the demotion to several of his supervisors and for four months received bricklayers' wages for laborer's work. Is this form of self-protection enough to extend the time for suit?

Then there are questions about "prejudice." Does this include any monetary loss (such as the need to pay increasing sums in back wages) or only a diminution in the ability to defend against the claim? Compare *Lingenfelter, supra,* 691 F.2d at 342 (expressing doubt that an increase in liability for back pay is "prejudice"), with *United States ex rel. Arant v. Lane*, 249 U.S. 367, 39 S.Ct. 293, 63 L.Ed. 650 (1919) (delay that requires government to pay two salaries for a single service is prejudicial). In this case the City says it will have to pay substantial back wages; Smith says that what is big money to him is small from the City's perspective. The City says it would need to fire someone else to make room for Smith; is this "prejudice" at all? No matter what counts as prejudice, how much is too much?

Litigation about laches diverts time and energy from the central issue in the litigation. It is a costly, enervating sideshow. Litigation about laches in *Shakman* cases has become routine business in the district court. *Shakman* applies to most workers in Chicago's government. It may be in effect for many years to come. It is likely

to affect thousands of employment decisions. In 1984 alone the district court published at least four decisions adjudicating claims of laches in cases under *Shakman,* and there must have been many more unpublished orders, such as the one we review here. See *McGuire v. City of Chicago,* 592 F.Supp. 56 (N.D.Ill.1984); *Herron v. City of Chicago,* 591 F.Supp. 1565 (N.D. Ill.1984); *Gurgone v. City of Chicago,* 587 F.Supp. 1347 (N.D.Ill.1984); *Crabtree v. City of Chicago,* 585 F.Supp. 1389 (N.D.Ill. 1984).

Questions such as "how much delay is too much?" take their toll in more than time and energy. The existence of such questions may injure potential plaintiffs who do not know what they must do to protect their rights. People aggrieved by the City's decisions may protect their rights by filing suit at once, but they may have good reasons not to do so. They may believe that informal procedures, including discussions with supervisors, will lead to redress. Litigation strains relations between employee and employer; it is properly a last resort. The injured employee may want to postpone litigation for as long as possible while exhausting other avenues. If no clear rule establishes how much delay is permissible, however, injured employees must either forswear their less contentious remedies or risk losing their legal rights.

The litigants and the legal system therefore have a common interest in easily stated, easily applied rules of procedure. Bright-line rules save the time of litigants and courts for the merits of the disputes; they tell parties what they must do to protect their rights. Courts should establish understandable, simple rules for the timely filing of litigation whenever possible. See *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 1946–47, 85 L.Ed.2d 254 (1985). Laches is not the doctrine of choice for determining the outer limit within which to file suit. Its usual role is to terminate the right to sue someplace short of the period of limitations, when inexcusable delay coupled with prejudice makes the regular period too long. Yet laches has so

far been the only device for determining the timeliness of litigation under the *Shakman* decree. The time has come to establish a period of limitations.

II

*Shakman* is a judicial decree; a violation of that decree is contempt of court. There is no fixed statutory period for prosecuting civil contempts, but federal courts may borrow suitable periods of limitations from other statutes as a matter of federal law. See *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 158–63 & n. 13, 103 S.Ct. 2281, 2287–90 & n. 13, 76 L.Ed.2d 476 (1983). The source of the right in question is federal. The remedy (contempt of court) is part of the common law power of the federal courts. The period of limitations therefore also is an issue of federal law, to be adopted through the common law process. See *DelCostello, supra.*

One possible source of a period of limitations is 42 U.S.C. § 1983. Section 1983 was the foundation of the original suit in *Shakman.* See *Shakman v. Democratic Organization of Cook County,* 435 F.2d 267 (7th Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971). Section 1983 does not supply a statute of limitations, however. Instead 42 U.S.C. § 1983 refers courts to state law when federal law is not "sufficient." In *Wilson v. Garcia* the Supreme Court held that federal law supplies a sufficient characterization of all § 1983 suits—as actions to redress personal injuries—and state law then supplies the statute of limitations, in Illinois, generally two years. More to the point *this* case, unlike the original *Shakman* suit, is not based on § 1983. It is an action for contempt of the consent decree. The decree defines and shapes the rights in question. Many of the issues that make § 1983 litigation difficult are not present here. The decree defines jobs for which political considerations are appropriate and those for which they are not. Cf. *Grossart v. Dinas,* 758 F.2d 1221 (7th Cir.1985). The district court, sitting without a jury, hears *Shak-*

*man* cases expeditiously. The simplification of the litigation suggests the use of a shorter period of limitations. Cases under *Shakman* are all of a kind. They are complaints about a particular kind of discrimination in the course of employment. *United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and *DelCostello* hold that reasonably short periods should be borrowed in employment cases and reject arguments for use of the statute of limitations for enforcing contracts. The reasons the Court gives in *Mitchell* and *DelCostello* apply here as well. We look, therefore, to the many statutes that establish periods of limitations for employment disputes similar to the ones governed by the *Shakman* decree.

Federal statutes regulating the employment relation contain periods of limitations in the range of 180 days. For example, the Age Discrimination in Employment Act gives a complaining party 180 days within which to file a charge with the Equal Employment Opportunity Commission. 29 U.S.C. § 626(d); see *Posey v. Skyline Corp.,* 702 F.2d 102 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). Title VII of the Civil Rights Act of 1964 ordinarily gives the complaining party the same 180 days. 42 U.S.C. § 2000e–5(e). (We disregard the difference between "deferral" and "non-deferral" states.) An employee protesting an unfair labor practice under the National Labor Relations Act has six months to complain to the National Labor Relations Board, 29 U.S.C. §§ 158, 160(b), and *DelCostello* holds that the same period applies to most suits under the Labor Management Relations Act, 29 U.S.C. § 185. Cf. *Vallone v. Local 705,* 755 F.2d 520 (7th Cir.1984) (applying the same period to the Labor Management Reporting and Disclosure Act).

Statutes apply the six-month period to claims connected with civil service employment, too. A person complaining to the Federal Labor Relations Authority about an unfair labor practice must do so within six months, 5 U.S.C. § 7118(a)(4)(A). Protests about violations of the civil service laws must be made even more quickly. Appeals to the Merit Systems Protection Board from adverse actions by an agency must be filed within 20 days. 5 C.F.R. §§ 1201.22(b), 1201.154(a)(1); see *Wallace v. MSPB,* 728 F.2d 1456 (Fed.Cir.1984).

The law of Illinois uses the 180-day period for most disputes arising out of employment. The Human Rights Act, Ill.Rev. Stat., ch. 68, ¶ 7–102(A)(1), gives complainants 180 days to file with the Department of Human Rights. The Public Labor Relations Act, Ill.Rev.Stat., ch. 48, ¶ 1611, allows employees six months to file unfair labor practice complaints. The statute establishing the civil service system in Chicago, Ill.Rev.Stat., ch. 24, ¶ ¶ 10–1–18, 10–1–18.1, does not contain a period of limitations, but state courts have held that suits must be filed within six months. E.g., *Dixon v. Cahill,* 10 Ill.App.3d 779, 295 N.E.2d 349 (1st Dist.1973).

A few statutes that govern employment have longer periods. The Equal Pay Act, for example, allows suit to be filed until two years from the date of underpayment, 29 U.S.C. § 255(a). Minimum wage laws also have periods of limitations exceeding six months. The apparent line of demarcation is between statutes that affect the fact of employment and statutes that govern the rate of pay. If a person is on the job, doing the work the employer wants him to perform, then there is no particular rush about litigation designed to fix the minimum lawful rate of pay for the work in question. The work will be done—has been done—one way or the other.

Litigation about hiring, firing, and the assignment of work has more urgency about it. If a person is fired, someone else is likely to be given the work. Litigation may require the employer to pay twice for the same work, as the Supreme Court emphasized in *Arant, supra,* 249 U.S. at 372, 39 S.Ct. at 294. If the litigation also produces an order to reinstate a wronged employee, or to hire a wronged applicant for work, this may cause loss to other innocent employees. See *Franks v. Bowman*

Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Disputes of this sort should be filed quickly and litigated briskly in order to hold to a minimum unnecessary loss to employer and other employees—loss that ultimately must lead to lower wages for all employees.

The *Shakman* decree is closely analogous to Title VII of the Civil Rights Act of 1964. That statute prohibits discrimination in state and local governmental employment on account of religion (among other subjects); *Shakman* adds speech and political affiliation to the list. The period established by Title VII is 180 days. Under Title VII the charge must be filed with the EEOC or an appropriate state agency. Under *Shakman* the district court, sitting to enforce its decree, plays the role of both agency and court. The court is civil service commission, mediator, and adjudicator all at once. We hold that the 180-day period of limitations established by Title VII applies to contempt proceedings under the *Shakman* decree. In order to promote clarity, we adopt the entire corpus of Title VII timing rules, including those defining the accrual of the claim and tolling the period of limitations.

The district court may think it wise to continue to apply laches rather than the 180-day period of limitations to other petitions filed before the release of this opinion. That court also may find it appropriate to require the City to amend its posted notices of employees' rights under the *Shakman* decree to include a warning about the period of limitations. We need not address in this case the possibility that an employee will forswear his rights under the decree and bring suit based on § 1983, with its longer period of limitations. These and related questions about the administration of the period of limitations are for the district court in the first instance.

## III

Smith's time started running on November 25, 1982, when he was demoted from bricklayer to laborer. The date of discharge in 1984 is irrelevant. Smith may have been let go because he was a laborer rather than a bricklayer, but the discharge was not an independently discriminatory act. Under *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), and *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the discriminatory act, and not the discharge that flows from the act, is the critical time.

Under *Chardon* and *Ricks* it is immaterial that Smith strongly preferred not to sue the City while still employed. True, the City might have retaliated for the suit, but the retaliation would have been a new wrong under the *Shakman* decree, and the district court would have provided a remedy. A would-be plaintiff may not grant himself additional time to file suit just because he fears new wrongs and distrusts the ability of the court to protect him from unlawful retaliation.

For four months (April through July 1983) Smith was paid at a bricklayer's rate rather than a laborer's. He says that this occurred because of the intervention of the president of his union and ended when a budget cutback eliminated the funds for such premium pay. This episode does not toll the period of limitations. In *Ricks* the employee continued to be paid in full for a substantial time after being told he had been denied tenure, and the Court nonetheless held that the date of the denial of tenure was the date from which the time ran. Discharge, the injury Smith ultimately suffered, stemmed from his status as a laborer, not from his level of pay.

Smith filed an affidavit stating that he made other efforts to secure his bricklayer's position once more. He talked to his supervisor and to the Democratic Party's committeeman for his ward. None of his efforts was successful. For purposes of the period of limitations, none was pertinent. See, e.g., *Electrical Workers v. Rob-*

*bins & Myers, Inc.*, 429 U.S. 229, 236–40, 97 S.Ct. 441, 446–49, 50 L.Ed.2d 427 (1976), holding that the pursuit of independent avenues of redress does not extend the time under Title VII.

■ This proceeding, filed 21 months after the demotion, therefore was 15 months too late. Although the district court dismissed the suit under the doctrine of laches, the application of a statute of limitations does not injure Smith. Other decisions applying laches to *Shakman* cases have found even 11 months to be too long. *In re Silva*, No. 83 C 3942 (N.D.Ill. 1983). Smith's petition was properly dismissed.

AFFIRMED.