Dennis BRENNAN, Plaintiff,

v.

Richard M. DALEY, in his official capacity as Mayor of Chicago, a municipal corporation, Defendant.

No. 86 C 8665.

United States District Court,
N.D. Illinois, E.D.

Nov. 1, 1991.

Cyriac D. Kappil, John F. O'Meara, Chicago, Ill., for plaintiff.

Kelly R. Walsh, Corp. Counsel, Terence J. Moran, Chief Asst. Corp. Counsel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The City of Chicago has made several attempts to dispose of Dennis Brennan's claim that the City improperly considered political affiliation in filing the position of hoisting engineer apprentice in violation of *Shakman v. Democratic Organization of Cook County*, 435 F.2d 267 (7th Cir.1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1383, 28 L.Ed.2d 650 (1971). This Court denied the City's first motion for summary judgment, because of a genuine issue of material fact concerning when Brennan's claim accrued. *Brennan v. Washington*, No. 86 C 8665, slip op., 1989 WL 18318 (N.D.Ill. Feb. 23, 1989). In an opinion dated September 14, 1989, this Court granted the City's second motion for summary judgment, finding that Brennan had failed to file his *Shakman* complaint within the 180–day statute of limitations established in *Smith v. City of Chicago*, 769 F.2d 408, 413 (7th Cir. 1985). Brennan appealed this decision. On April 8, 1991, the Seventh Circuit held that Brennan had timely filed his complaint and remanded the case to this Court. 929 F.2d 346. Having failed to dispose of the case through summary judgment, the City is back before the Court claiming that Brennan's claim should be dismissed for lack of subject matter jurisdiction due to mootness. For the reasons set forth below, the City's motion is granted.

## STATEMENT OF FACTS

The background of this case has been expounded upon several times, both by this Court and the Seventh Circuit. Therefore, this opinion will focus on the facts relevant to the disposition of the present motion.

Brennan was an unsuccessful applicant for the position of Hoisting Engineer Apprentice. He learned of the position through a notice indicating that the application deadline was August 31, 1984 and filed his application on August 28, 1984. The deadline was subsequently extended to October 24, 1984. In the following months, Brennan contacted the City's personnel department repeatedly for information concerning the status of his application. On September 13, 1984, pursuant to a Freedom of Information Act (FOIA) request, Brennan obtained a computer printout indicating that as of September 5, 1984, forty-seven people had applied for the position. Through a subsequent FOIA request, Brennan learned that as of September 29, 1984, 116 applicants had submitted their names.

A December 30, 1985 printout of active City employees, also obtained by Brennan, indicated that six people were hired as Hoisting Engineer Apprentices during 1985. Brennan was not selected for the position.

Upon obtaining the list of those hired in 1985, Brennan asked the Deputy Commissioner of Personnel, Robert Joyce, whether any of those names were suspicious under *Shakman*. Joyce indicated that one of the six people hired in 1985, Robert Terzich, Jr., might be the son of a state senator. Brennan knew that Terzich was not on the list of applicants current through September, 1984, but the City refused to provide him with a final list of applicants. In July of 1986, Brennan obtained a copy of Terzich's employment application and discovered that he had been permitted to submit his name for the position on October 3, 1985, nearly one year after the extended deadline. According to the City, this special consideration had been granted him because he had submitted a statement from his doctor that he had been too sick to apply at the time of the deadline. The doctor's statement, it was later discovered, was false. Accordingly, on February 14, 1986, Terzich was fired from his position with the City. On November 6, 1986, Brennan filed his *Shakman* complaint.

## ANALYSIS

### *Shakman.*

The original *Shakman* complaint was brought by independent candidates, voters and taxpayers challenging the patronage practices of the regular Democratic and Republican Party organizations. The complaint challenged the use of state and local government patronage power to coerce government employees to perform political work on behalf of incumbents. *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315, 1320 (N.D.Ill. 1979). The court found that the challenged patronage practices violated the plaintiffs' first and fourteenth amendment interests. On May 5, 1972, the court entered a consent decree enjoining the *Shakman* defendants from "conditioning, basing or know-

ingly prejudicing or affecting any term or aspect of government employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor." *Id.* at 1358. While the consent decree dealt with the issue of politically motivated firings and threats thereof, the parties agreed "that they would continue to litigate the issue of whether political sponsorship or other political considerations could be considered in hiring new employees."

On April 4, 1983, the court entered a judgment implementing the hiring aspect of the *Shakman* case. Pursuant to the judgment, the defendants were prohibited from

> conditioning, basing or affecting ... the hiring of any governmental employees ... upon or because of any political reason or factor including, without limitation, any prospective employee's political affiliation, political support or activity, political financial contribution, promises of such political support, activity or financial contributions or such prospective employee's political sponsorship or recommendation.

*Shakman v. Democratic Organization of Cook County*, 569 F.Supp. 177, 179 (N.D.Ill.1983). The court granted the right to enforce the provisions of the injunction to any registered voter. *Id.* at 182. On appeal, however, the Seventh Circuit overturned the *Shakman* judgment as it applied to the nonconsenting defendants, holding that voters and independent candidates lacked standing to challenge the failure of the independent candidates to be elected. *Shakman v. Dunne*, 829 F.2d 1387 (7th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988); *see also* Bowman, *"We Don't Want Anybody Anybody Sent": The Death of Patronage Hiring in Chicago*, 86 Nw. U.L.Rev. 57 (1991).

### *Brennan's Shakman Claim.*

The City claims in the present motion that this case has been moot since its inception, and, therefore, the Court must dismiss it for lack of subject matter

jurisdiction. In other words, because Terzich was fired from his job before Brennan even filed the instant action, any alleged *Shakman* violation has already been remedied. Brennan counters that the City has misconstrued his claim. The *Shakman* violation upon which he bases his claim is not merely the hiring of Terzich, but also the resulting failure to hire him. Accordingly, Brennan suggests that unless the City can prove that it would not have hired Brennan even if it had not given the job to a political patron, the motion to dismiss must be denied.

Brennan's analysis of the *Shakman* consent decree would effectively give a separate cause of action to each of the 116 applicants on the September eligibility list for the position of Hoisting Engineer Apprentice, and each of these causes of action would involve a different inquiry: whether the complainant should have been hired instead of the person who got the job. The *Shakman* judgment, as it extends to the hiring context, is concerned with infusing the hiring process with requirements of allegiance or other patronage practices. Thus, it "enjoins the defendants from hiring or refusing to hire employees based on political considerations." *Herron v. City of Chicago*, 619 F.Supp. 767, 773 (N.D.Ill. 1985). In other words, each time the City examines an individual candidate, it is enjoined from basing its decision on politics. For this reason, if Terzich was hired because his father was a state senator, that decision to hire him violated the consent decree. To suggest, as Brennan does, that the *Shakman* violation extended to the fact that *he was not hired* is to gloss over several intervening assumptions, none of which have been addressed in Brennan's complaint.[1] For example, Brennan has not suggested that he was more qualified than all of the other candidates (of which there were at least 116), such that if Terzich had not been hired, he would have been. Similarly, he has not suggested that the position has subsequently been filled by someone who is either less qualified than Brennan or who was a patronage hire. Therefore, Brennan's argument that the failure to hire him poses either an independent *Shakman* violation or part of the alleged violation with respect to Terzich is simply too attenuated.

Brennan cites *Vrdolyak v. City of Chicago*, 604 F.Supp. 1325, 1332 (N.D.Ill.1984), to suggest that once he has demonstrated that Terzich was hired for political reasons, the City must then prove that even without those political considerations Brennan would not have been hired. Because, as this Court has already discussed, the failure to hire Brennan does not pose a separate remediable *Shakman* violation under the allegations of the complaint, Brennan has misinterpreted the elements of proof. Under *Vrdolyak*, if Terzich were still a City employee, the City would have had to respond to Brennan's allegations by demonstrating that it would have hired Terzich regardless of his political affiliation. *Id.* The elements of proof do not extend to the failure to hire Brennan.

This conclusion is buttressed by the fact that Brennan has no remedy under his complaint. This Court cannot order the City to hire him as a Hoisting Engineer Apprentice. And, Brennan has not alleged that any decisions made subsequent to the firing of Terzich were tainted in any way. The only remedy available for the alleged violation of the consent judgment posed by the employment of Terzich would have been for this Court to order his discharge. That has already been taken care of.

By firing Terzich, the City cured the only tenable *Shakman* claim alleged in Brennan's complaint. Because Terzich is no longer a City employee—and has not since before the filing of this complaint—the City does not stand in contempt of the consent decree. Therefore, the controver-

---

1. In his surreply brief, Brennan alleges for the first time that all of the five Hoisting Engineer Apprentices hired in 1985 were *de facto* political hires, because none of them appeared on the September *Shakman* eligibility list. Brennan may not raise these allegations for the first time in his surreply brief, particularly in light of the fact that his fourth amended complaint does not hint at these new allegations. Brennan can not use his surreply brief to amend his complaint retroactively. Accordingly, the Court will ignore these surprise allegations.

sy is moot. *See Ragsdale v. Turnock*, 841 F.2d 1358, 1365 (7th Cir.1988). Accordingly, because mootness deprives the Court of subject matter jurisdiction, *see Charles v. Daley*, 749 F.2d 452, 456 (7th Cir.1984), Brennan's complaint is dismissed.