CITIZENS ORGANIZED TO SAVE THE TAX CAP, Petitioner, v. THE STATE BOARD OF ELECTIONS *et al.*, Respondents.

First District (5th Division) No. 1—07—2389

Opinion filed May 22, 2009.—Rehearing denied July 22, 2009.

Richard Becker, of Glenview, and Lawrence T. Miller, of Chicago, for petitioner.

Lisa Madigan, Attorney General of Chicago (John Schmidt, Assistant Attorney General, of counsel) for respondent State Board of Elections.

Anthony G. Scariano and John Murphy, both of Scariano, Himes & Petrarca, Chtrd., of Chicago, for respondents.

JUSTICE TULLY delivered the opinion of the court:

Citizens Organized to Save the Tax Cap (petitioner) appeal an order of the State Board of Elections for the State of Illinois (Board) dismissing their complaint because it was not filed upon justifiable grounds.

On July 24, 2006, the Northfield Township High School District Number 225 (District), by a resolution of its board of school trustees (Trustees), placed a referendum on the November 7, 2006, general election ballot. The question was whether the District would be authorized to make improvements and repairs to school buildings, pay and retire alternate bonds issued to finance or refinance the building and equipping of additions and renovations, and issue bonds in the amount of $94 million. Petitioner opposed the referendum, which was ultimately approved.

On May 10, 2007, petitioner filed a verified complaint with the Board which alleged that the District mailed several newsletters regarding the referendum to voters between October 20, 2006, and November 1, 2006, at a total cost of $12,978.51. The complaint contained three alternative counts. Count I alleged that the District spent in excess of the minimum statutory amount for electioneering communications, which established its status as a local political committee, and therefore failed to file required statements of organization and campaign disclosure reports. Count II made the same allegations, except as to the Trustees individually. Count III made the same allega-

tions as count II, but also alleged that the newsletters were electioneering communications constituting contributions to an existing local political committee in support of a question of public policy and that the Trustees lacked the authority to expend public funds to advocate the passing of the referendum. The complaint requested the appointment of hearing officers, private and public hearings, a determination that the violations occurred, and that the District and/or Trustees file as a local political committee and file the requisite financial reports.

On June 13, 2007, a closed preliminary hearing was held. Petitioner established that 76,210 newsletters were printed and mailed by the District and that $12,978 in District checks were spent on the mailings. The hearing officer's report indicated that the complaint met minimum pleading requirements and was filed in good faith; however, it recommended that the matter not proceed to an open preliminary hearing. The report stated that section 9—25.1 of the Election Code (10 ILCS 5/9—25.1 (West 2006)) permitted the use of public funds to inform taxpayers of the upcoming referendum. The report explained that although sections 9—1.7 and 9—3 of the Election Code have a $3,000 reporting threshold for organization and filing as a local political committee, public funds should not be calculated in determining whether the threshold is met. The general counsel of the Board later agreed with the hearing officer's recommendation and recommended that the complaint be dismissed, opining that the complaint was not filed upon justifiable grounds.

At an August 20, 2007, meeting the Board considered petitioner's complaint and the recommendations of that hearing officer and general counsel. After discussing the matter, the Board voted 6 to 2 that the complaint be dismissed. The Board subsequently entered an order to that effect, adopted the findings of the hearing officer and general counsel, and dismissed the complaint because it was not filed on justifiable grounds. Petitioner filed this timely petition for review.

Petitioner first contends that the Illinois State Board of Elections erred in finding that section 9—25.1 of the Election Code exempted the District from registration and financial disclosure requirements.

Because the parties disagree as to the correct interpretation of the statutes, this is a question of law, which we review *de novo. Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532 (2006).

■ Section 9—1.7 of the Election Code, in pertinent part, provides:
 " 'Local political committee' means the candidate himself or any individual, trust, partnership, committee, association, corporation, or other organization or group of persons which:
 ***

(b) accepts contributions or makes expenditures during any 12-month period in an aggregate amount exceeding $3,000 in support of or in opposition to any question of public policy to be submitted to the electors of an area encompassing no more than one county; [or]

\*\*\*

(d) accepts contributions or makes expenditures during any 12-month period in an aggregate amount exceeding $3,000 for electioneering communications relating to any candidate or candidates described in paragraph (a) or any question of public policy described in paragraph (b)." 10 ILCS 5/9—1.7 (West 2006).

Additionally, section 9—3 of the Election Code provides for certain filing requirements, providing in part:

"Every state political committee and every local political committee shall file with the State Board of Elections, and every local political committee shall file with the county clerk, a statement of organization within 10 business days of the creation of such committee, except any political committee created within the 30 days before an election shall file a statement of organization within 5 business days." 10 ILCS 5/9—3 (West 2006).

Section 9—25.1(b) of the Election Code provides:

"No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated for political or campaign purposes to any candidate or political organization. This Section shall not prohibit the use of public funds for dissemination of factual information relative to any proposition appearing on an election ballot, or for dissemination of information and arguments published and distributed under law in connection with a proposition to amend the Constitution of the State of Illinois." 10 ILCS 5/9—25.1 (West 2006).

Here, petitioner's complaint alleged that the District violated the Election Code because it spent more than $3,000 on mailings to voters regarding an upcoming school bond referendum but failed to register with the Board as a local political committee, appoint a treasurer and chairman, and file financial reports. Although petitioner has made no claims that section 9—25.1 itself was violated and argues that the section is inapplicable, respondents maintain that section 9—25.1 is applicable to section 9—1.7 in that public funds expended on the dissemination of facts to the public should not be calculated against the $3,000 threshold limit. It is argued that the filing requirements in sections 9—1.7 and 9—3 are ambiguous because the Election Code, through section 9—25.1, allows the use of public funds for dissemination of factual information related to a proposition on a ballot.

However, we do not see how these sections are ambiguous. Section 9—25.1 prohibits the expenditure of public funds to urge an elector to

"vote for or against any candidate or proposition," but allows the use of public funds to disseminate facts to the public. The relevant portions of section 9—1.7 generally provide that an entity will be considered a "local political committee" (and thus be subjected to the filing requirements of section 9—3) if an amount exceeding $3,000 is contributed or expended during any 12-month period in a number of ways. Sections 9—1.7(a), (b), and (c) generally relate to the endorsement of or opposition to a specific candidate or public policy. Therefore, if section 9—25.1 is obeyed and public funds are properly used to only disseminate facts to the public, this automatically removes it from the ambit of sections 9—1.7(a), (b), and (c). However, section 9—1.7(d) provides that an entity will be considered a "local political committee" if it makes expenditures exceeding $3,000 "for electioneering communications relating to any candidate or candidates described in paragraph (a) or any question of public policy described in paragraph (b)." 10 ILCS 5/9—1.7(d) (West 2006). Therefore, it is entirely possible that expending public funds on disseminating facts to the public may comply with section 9—25.1 and still fall within the ambit of section 9—1.7(d), so long as the method of dissemination constitutes an "electioneering communication." There is no conflict or ambiguity among the statutes in question. Section 9—25.1 simply serves to prohibit the use of public funds to explicitly support or oppose any specific candidate or proposition while still allowing such funds to be used to disseminate factual information to the public regarding propositions. Nothing in the statute suggests that it serves to absolutely exempt government entities from the disclosure requirements contained in the remainder of the Election Code. We must read the statute in the manner in which it was written and must not read into it exceptions, limitations or conditions that are not already there. *Ultsch v. Illinois Municipal Retirement Fund*, 226 Ill. 2d 169, 190 (2007). Furthermore, we are unpersuaded by the respondents' repeated claims that this would lead to wildly absurd results in that school districts would be required to report all revenues and expenditures to the State Board. For example, a simple hypothetical solution would be similar to the one used for nonprofit organizations, where a separate political committee could be created to provide for segregated accounts on the contributions or expenditures made on questions of public policy. See 26 Ill. Adm. Code §100.130(d), amended at 30 Ill. Reg. 17505, eff. November 3, 2006.

However, although we have held that section 9—25.1 does not automatically exempt governmental entities from the other sections' disclosure requirements, we still must determine whether the expenditures made by the District were sufficient to require it to

register as a local political committee and thus be subjected to section 9—3's filing requirements. Petitioner argues that the newsletters the District circulated constitute an electioneering communication and, therefore, they were subject to the applicable portions of section 9—1.7. Respondents argue that the newsletters did not constitute electioneering communications because they did not advocate the referendum in the mailings.

■ This is a mixed question of law and fact, that is, a question regarding the legal effect of a given set of facts, and we review such questions under a clearly erroneous standard of review. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998). A decision is clearly erroneous only if the reviewing court is left with a definite and firm conviction that a mistake has been committed. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). An electioneering communication is defined as:

"[A]ny form of communication, in whatever medium, including but not limited to a newspaper, radio, television, or Internet communication, that (1) refers to a clearly identified candidate or candidates who will appear on the ballot, refers to a clearly identified political party, or refers to a clearly identified question of public policy that will appear on the ballot and (2) is made within (i) 60 days before a general election or consolidated election or (ii) 30 days before a primary election. 10 ILCS 5/9—1.14(a) (West 2006).

Section 9—1.14(b)(3) states that an electioneering communication does not include a "communication made as part of a non-partisan activity designed to encourage individuals to vote or to register to vote." 10 ILCS 5/9—1.14(b)(3) (West 2006).

The newsletters in the instant case consisted of two separate mailings. One was titled "Special Referendum Edition" and further displayed in large text "Glenbrook Building Bond Referendum on November 7, 2006 Ballot." The second was titled "Referendum in Brief." The "Special Referendum Edition" consisted of four pages discussing the referendum in great detail. The "Referendum in Brief" consisted of two pages, with the first page discussing the referendum and the second page stating "Election Day is Tuesday, November 7, 2006, Please Vote!" in large text.

■ The parties engage in considerable discussion as to whether the newsletters advocated the passing of the referendum or not. Although the newsletters do appear to primarily extol the benefits of the referendum if passed, information regarding the cost to the taxpayer is also clearly provided. Nevertheless, we decline to reevaluate the determinations as to whether the documents advocated the passing of the referendum since we do not find it to be necessary. When constru-

ing a statute, a court should look to the plain language of the statute to ascertain and give effect to the intent of the legislature. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Here, the plain language of section 9—1.14 provides that an electioneering communication is any communication that "refers to a clearly identified question of public policy that will appear on the ballot." 10 ILCS 5/9—1.14 (West 2006). The communications here clearly refer to the referendum in title and content, and thoroughly discuss it in detail. Respondents' arguments that the documents "speak for themselves" in that they only encourage individuals to vote is unpersuasive. The newsletters clearly address and focus on the referendum and thus, under the plain language of section 9—1.14, are electioneering communications. Respondents' argument that the newsletters were nothing more than communications designed to encourage individuals to vote is unpersuasive. The first newsletter did not discuss voting or encourage individuals to vote, it simply informed individuals on the referendum. Neither newsletter discussed voter registration. The second page of the second newsletter did state "Please Vote!" but in equally large letters above it also stated that "The Glenbrook Bond Referendum is the last item on the ballot." This was the only place, out of a total eight pages of newsletters, that actual voting was mentioned. Furthermore, the first page of that newsletter was entirely dedicated to discussing the upcoming referendum. There is simply no evidence that these newsletters were exempted communications "made as part of a non-partisan activity designed to encourage individuals to vote or to register to vote," and especially so because the newsletters were products of a campaign directly related to the referendum and not the voters themselves. Although substantial deference is given to the findings below under a clearly erroneous standard of review, after reviewing the record and applicable statutes, we find that it was clearly erroneous to find that the newsletters did not constitute an electioneering communication under the plain language of section 9—1.14.

For the foregoing reasons, we find that it was improper to find that petitioner's complaint was not filed on justifiable grounds, and the decision of the State Board of Elections of the State of Illinois is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

R. GORDON and TOOMIN, JJ., concur.