# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Sherman v. Indian Trails Public Library District***, 2012 IL App (1st) 112771

| | |
|---|---|
| Appellate Court Caption | ROBERT I. SHERMAN, CELESTE S. SHERMAN, MARY F. DAY, ROBERT B. DINNERMAN, and RONALD P. MRAZ, Petitioners-Appellants, v. INDIAN TRAILS PUBLIC LIBRARY DISTRICT, a Body Politic; GENE LOOFT, HENRY HACKNEY, JR., WALLY SALGANIK, DORIS WAGNER, LOUISE BARNETT, EARL SABES and PATRICIA MURRAY, as Trustees of Indian Trails Public Library District; DAVID ORR, as Cook County Clerk; WILLARD R. HELANDER, as Lake County Clerk, Respondents-Appellees. |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2771 |
| Rule 23 Order filed<br><br>Rule 23 Order withdrawn<br>Opinion filed | June 28, 2012<br><br><br>July 26, 2012<br>August 3, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A petition filed by several electors in a public library district pursuant to the Election Code contesting a referendum for a tax increase based on allegations that the district or its trustees violated campaign financing and disclosure laws failed to state an election contest claim in the absence of any allegations of violations or fraud in the conduct of the election or violations of the state or federal constitution. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-COEL-66; the Hon. Mark J. Ballard, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Andrew Finko, of Chicago, for appellants. |
| | Kenneth M. Florey and Nanci N. Rogers, both of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., and Christopher J. Dallavo, of Schueler, Dallavo & Casieri, both of Chicago, for appellee Indian Trails Public Library District. |
| Panel | PRESIDING JUSTICE EPSTEIN delivered the judgment of the court, with opinion. |
| | Justices McBride and Howse concurred in the judgment, and opinion.* |

## OPINION

¶ 1    Petitioners Robert I. Sherman, Celeste S. Sherman, Mary F. Day, Robert B. Dinnerman, and Ronald P. Mraz appeal the circuit court of Cook County's decision to dismiss their election contest petition pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)) for failure to state a cause of action. We affirm.

¶ 2                                  BACKGROUND

¶ 3    The relevant facts are not disputed. On April 2, 2011, the voters of the Indian Trails library district, including petitioners, voted on a referendum question concerning property tax increases designated for the library district. A "yes" vote on the referendum would result in an increase to 9.8% for 2011. A "no" vote would leave the extension limitation at the statutory level that would be calculated as the lesser of 5% or the percentage increase in the Consumer Price Index over the prior levy year (or 1.438%). The Cook County clerk issued the official proclamation of the referendum results on April 26, 2011, with 2,132 "yes" votes and 1,985 "no" votes.

¶ 4    On May 18, 2011, petitioners filed an election contest petition in the circuit court of Cook County against respondents, Indian Trails Public Library District, a body politic (Library District); Gene Looft, Henry Hackney, Jr., Wally Salganik, Doris Wagner, Louise Barnett, Earl Sabes and Patricia Murray, as trustees of Indian Trails Public Library District; David Orr, as Cook County clerk; and Willard R. Helander, as Lake County clerk, alleging that the Library District or its trustees violated certain campaign financing and disclosure

_____

*Justice Joseph Gordon participated in this case. Following his passing, Justice McBride has replaced him on the panel and has reviewed the briefs.

laws. The individual trustees were later dismissed from the suit by agreement. Specifically, petitioners alleged that the Library District decided and voted to take steps to support and encourage passage of the referendum and expended public funds for the purpose of promoting, and advocating for, the passage of the referendum. Petitioners sought to have the election declared null and void. Petitioners additionally sought to "permanently restrain and enjoin [the Library District] from any further and additional illegal expenditures of public funds for partisan political and other private purposes."

¶ 5        On June 30, 2011, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), the Library District filed a motion to dismiss the election contest petition for failure to state a cause of action under which relief could be granted.

¶ 6        After full briefing and oral arguments, the circuit court granted the motion to dismiss on July 29, 2011. On August 24, 2011, the court denied petitioners' motion to reconsider. Petitioners filed this timely appeal.

¶ 7                                    ANALYSIS
¶ 8                               Standard of Review
¶ 9        When reviewing a section 2-615 motion to dismiss, we accept as true all well-pled facts and interpret the allegations in the complaint in the light most favorable to the plaintiff. *Seith v. Chicago Sun-Times, Inc.*, 371 Ill. App. 3d 124, 133 (2007). This court reviews the circuit court's order granting the section 2-615 motion to dismiss *de novo*. *Id.*

¶ 10                            Election Contest Petition
¶ 11        Section 23-20 of the Election Code states, in pertinent part, that the petition filed by a person who desires to contest an election "shall allege that the petitioner voted at the election, and that he believes that a mistake or fraud has been committed in specified precincts in the counting or return of the votes for the office or proposition involved or that there was some other specified irregularity *in the conduct of the election* in such precincts, and the prayer of the petition shall specify the precincts in which the recount is desired." (Emphasis added.) 10 ILCS 5/23-20 (West 2010).

¶ 12        It is undisputed that public funds cannot be used to urge persons to vote in a particular way. The Election Code states:

> "No public funds shall be used to urge any elector to vote for or against any candidate or proposition, or be appropriated for political or campaign purposes to any candidate or political organization. This Section shall not prohibit the use of public funds for dissemination of factual information relative to any proposition appearing on an election ballot, or for dissemination of information and arguments published and distributed under law in connection with a proposition to amend the Constitution of the State of Illinois." 10 ILCS 5/9-25.1 (West 2010).

See also *Citizens Organized to Save the Tax Cap v. State Board of Elections*, 392 Ill. App. 3d 392 (2009).

¶ 13        There is no authority cited by petitioners, however, for nullifying an election based upon

the use of public funds for advocacy. Petitioners have failed to cite any legal authority in Illinois, or any other jurisdiction (state or federal), where a court has invalidated an entire election on this basis.

¶ 14    Moreover, as respondents note, "the General Assembly has specifically provided that prosecution under Article 9 for campaign financing violations may be commenced by a state's attorney or the Attorney General, and that the State Board of Elections may impose a fine or require remedial action of an offender." See 10 ILCS 5/9-3, 9-10, 9-26 (West 2010).

¶ 15    Article 17 of the Election Code, "Conduct of Elections and Making Returns," deals with "the actual conduct of elections and making of returns from and in the election precincts." 10 ILCS Ann. 5/art. 17, Official Comments on Drafting Commission, at 274 (Smith-Hurd 2010); see 10 ILCS 5/17-1 *et seq.* (West 2010). As respondents and the trial court noted, the petition did not allege any mistakes, violations or fraud in the conduct of the election itself. Petitioners instead allege that campaign financing laws and disclosure laws were violated. Taking petitioners' allegations as true, they have failed to state a claim for an election contest claim. Petitioners assert in their petition that "because of the mistakes made and the frauds and other prohibited and illegal acts committed in the conduct of the April 5, 2011 Library District referendum election that said election was so corrupted that it failed to obtain and determine a free, fair and untrammeled expression of the voters' choice [and] must be declared null and void." Petitioners, however, fail to allege any facts regarding any error or fraud in the "conduct" of the election by election authorities. They do not allege that the Library District administered the election, or caused the election to be administered, in a fraudulent or irregular manner, or that the Library District compromised the actual ballots or the act of voting. We conclude that the alleged violations of the Election Code do not form the basis for a cause of action for an election contest petition.

¶ 16    Petitioners have also failed to state a claim for violation of the state or federal constitution. Petitioners have described their constitutional rights with respect to elections and include in their brief on appeal those "[c]onstitutional implications of the [Library] District's political activities to support the Referendum through use of public funds." Petitioners assert on appeal that "the [Library] District's use of public funds for political purposes has violated petitioners' First and Fourteenth amendment rights to vote and associate for the common expression of political ideas."

¶ 17    Petitioners correctly state that "[e]ach voter's right to cast an equally weighted vote is a fundamental right at the core of our democracy." The Library District agrees and, citing *Goree v. Lavelle*, 169 Ill. App. 3d 696, 699 (1988), notes that "[i]n an election, the constitutional requirement is for each voter to have the right and opportunity to cast his or her vote without any restraint and for his or her vote to have the same influence as the vote of any other voter." Petitioners have failed to provide a reasoned argument as to why the Library District's activities violated their right to vote. Before the trial court and on appeal, respondents noted as follows:

"Infringement of voting rights found to have risen to this constitutional level include dilution of votes by reasons of malapportioned voting districts or weighted voting systems, purposeful or systematic discrimination against voters of a certain class or

political affiliation, or other 'willful conduct which undermines the organic process by which candidates are elected.' "

See *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975). Petitioners assert that the Library District's conduct was "willful conduct which undermine[d] the organic [election] process." " 'Willful conduct' means, at a minimum, that the defendants acted with the intent of subverting the electoral process or impairing a citizen's right to vote." *Parra v. Neal*, 614 F.3d 635, 637 (7th Cir. 2010). Petitioners have alleged no facts to support any such infringement of their right to vote, nor have they alleged that their votes were improperly counted or had any less influence than any other vote. As noted earlier, petitioners have failed to include any allegation that the conduct of the election process was improper in any manner. Although petitioners assert that individual votes "might" be impermissibly diluted by the expenditure of public funds to advocate a substantive position on a referendum question, respondents note that petitioners provided no authority in support of their contention.

¶ 18    Before the trial court, petitioners relied on the case of *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973) (*per curiam*), in support of their argument that voters' rights had been violated warranting nullification of the referendum election. The trial court found the reliance unpersuasive.

¶ 19    In *Smith*, an unsuccessful candidate for the Democratic nomination for the Illinois Senate and a voter in the primary challenged the results of the primary election, alleging that the winner was a "sham" candidate in that he intended to, and did, run as a stand-in so that he could use his popularity to win the nomination and then withdraw so that party insiders could fill the vacancy with a candidate of their choosing. *Smith*, 489 F.2d at 1100. The *Smith* court noted that the fraud involved was intimately connected with the face of the ballot and had the purpose and effect of deceiving voters as to the actual effect of their votes because a vote for a sham candidate was really a vote for another, undisclosed person. *Id.* at 1101. By contrast, the instant case does not involve a facial fraud. In granting the Library District's motion to dismiss, the trial court noted, "the referendum question at issue was written plainly and unambiguously and was set out on the face of the ballot using prescribed wording required by the Property Tax Extension Limitation Law." See 35 ILCS 200/18-205 (West 2010).

¶ 20    Petitioners contend "there are no prior decisions that could be located by counsel, regarding a public body taking such liberties with public funds." Yet petitioners cite *Elsenau v. City of Chicago*, 334 Ill. 78 (1929). In *Elsenau*, the court explained that the conduct of a campaign before an election for purpose of exerting influence on voters was not a "corporate purpose" of the municipality and the appropriation for advertising in support of proposed bond issues to be submitted to voters was unauthorized. However, the plaintiff taxpayer in *Elsenau* sought only to enjoin the issuance of warrants and the payment of money for the advertisements and did not seek to overturn an election. Contrary to petitioners' assertion, there is a substantial body of case law on the issue of a public body taking "liberties" with public funds. See, *e.g.*, *Kidwell v. City of Union*, 462 F.3d 620 (6th Cir. 2006) (city did not improperly compel taxpayers to support its positions by expending public funds to advocate for them); *Alabama Libertarian Party v. City of Birmingham*, 694 F. Supp. 814 (N.D. Ala.

1988) (city's use of tax revenues to promote passage of measures to enhance city services did not violate first amendment right of association); *Lash v. City of Union*, 104 F. Supp. 2d 866 (S.D. Ohio 1999) (city's use of funds to promote tax levy did not violate taxpayers' free speech rights but its use of public funds to oppose citizen initiative to defeat city counsel's proposal for new fire department did violate rights); *Stanson v. Brown*, 122 Cal. Rptr. 862 (Cal. Ct. App. 1975) (dismissing complaint for failure to state cause of action where complaint sought, among other things, to set aside election based on parks and recreation director's expenditure of public funds to promote passage of bond act, but complaint was deficient under relevant section of state's election code); see also Angela C. Poliquin, *Kromko v. City of Tucson: Use of Public Funds to Influence the Outcomes of Elections*, 46 Ariz. L. Rev. 423 (2004). These cases stand for the proposition that the unlawful advocacy of a governmental entity may be enjoined and fined. Not surprisingly, however, we have found no case where a court set aside an election on that basis. As respondents note, the distinction is enormous. Although this court does not condone the Library District's actions at issue here, setting aside an election would disenfranchise all voters who voted in support of the referendum and who did nothing wrong in exercising their right to vote. Petitioners, having failed to allege that their votes were improperly counted or had any less influence than any other vote, and having failed to allege any facts to support an infringement of their right to vote, have failed to state a cause of action for violation of their right to vote.

¶ 21    On appeal, petitioners have also asserted for the first time that the Library District's actions violated petitioners' first amendment civil rights, including their right to free speech and to associate for political purposes. The Library District asserts that the issue has been forfeited where petitioners failed to raise the issue below and where the trial court allowed petitioners the opportunity to replead their petition but they declined to do so and instead filed the instant appeal. The mere fact that arguments offered for the first time on appeal raise constitutional questions does not prevent the otherwise proper application of the forfeiture rule. See, *e.g.*, *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 467 (2010). In civil cases, constitutional issues not presented to the trial court are deemed forfeited and may not be raised for the first time on appeal. See, *e.g.*, *Alarm Detection Systems, Inc. v. Village of Hinsdale*, 326 Ill. App. 3d 372, 385 (2001); *cf. Forest Preserve District v. First National Bank of Franklin Park*, 2011 IL 110759, ¶ 27 (party's failure to challenge the constitutionality of a statute in the circuit court normally forfeits that challenge on appeal in a civil case). In any event, as the Library District correctly notes, even if these arguments had been raised below, there are no well-pled facts in the petition that could form the basis for a cause of action for petitioners' personal civil rights.

¶ 22    Invalidating an election is a remedy that courts have recognized as an extremely drastic measure. See, *e.g.*, *Andrews v. Powell*, 365 Ill. App. 3d 513, 522 (2006). We agree with the Library District that petitioners have failed to allege any acts or omissions that, even if taken as true, form a legal basis for invalidating each and every vote cast by electors in the April 5, 2011 referendum election. The trial court correctly granted respondents' motion to dismiss the election contest petition. The judgment of the circuit court of Cook County is affirmed.

¶ 23    Affirmed.