2025 IL App (1st) 241269-U

Nos. 1-24-1269 & 1-24-1274, Cons.

Order filed September 18, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KATIE DITTMER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 2023 OP 31186 |
| | ) | 2023 OP 31190 |
| RONALD DITTMER and IRENE DITTMER, | ) | |
| | ) | Honorable |
| Respondents-Appellants. | ) | Andreana Turano, |
| | ) | Judge presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1 *Held*: We affirm the circuit court's orders of protection entered against respondents and deny petitioner's request for sanctions.

¶ 2 Respondents, Ron and Irene Dittmer, appeal from the circuit court's orders granting petitioner, Katie Dittmer, a two-year plenary order of protection against Ron, and a two-year

plenary order of protection against Irene. The cases were consolidated on appeal. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      On December 11, 2023, Katie, who is married to Tim Dittmer, Irene and Ron's son, filed two separate emergency petitions for orders of protection against Irene and Ron. Katie's emergency requests included protection for Tim and their two children, H.D. and A.D. According to the petitions, on November 29, 2023, at 2:28 p.m., Katie "spotted Irene walking along my street and circling my house in a loop for over 20 [minutes]." Katie claimed that Irene was also at her child's bus stop when her child was getting off the bus. Katie stated that she and Tim had asked Irene to stop contacting them in August 2022. When she saw Irene, Katie called a third party who is related to Irene, and that third party told her that Irene had been contemplating meeting Katie's child at the bus stop so that she could say hello. Katie stated in the petition that she called 911, and that the responding officer told Irene she needed to leave the neighborhood. Katie felt an order of protection was "necessary due to the abusive nature of Ron's emails" and "for the safety of [her] children." She stated that Ron sent a verbally abusive and harassing email to her, her husband and their extended family. She also alleged that Ron sent an email to Tim which contained abuses and harassing language and Ron threatened to put Tim "in his place" if he ever disrespected Ron's wife again, which Katie perceived as a threat.

¶ 5      Katie also alleged in her petition that on December 19, 2022, Irene mailed a Christmas card to their house. On October 20, 2022, Irene mailed a package to her house, addressed to the children. In May, July, and August of 2022, Irene sent three verbally abusive communications via email and text to Tim. Katie also alleged that she, Tim, Ron and Irene went to mediation and Ron recorded their mediation sessions without consent.

¶ 6      A hearing was held on December 12, 2023. Katie testified that on November 29, 2023, she was leaving her house to pick her daughter up from the bus stop. When she stepped outside of her house she noticed Irene on the other side of the street, despite Katie asking her to stop contacting her back in August of 2022. Katie ran to her daughter's bus stop to make sure she got to her daughter first. After Katie got her daughter off the bus, Irene followed them to their house and then walked around it. Katie called Tim's brother and asked if he knew why Irene was there. Tim's brother stated that Irene had contemplated meeting Katie's daughter at the bus stop.

¶ 7      Katie testified that she called the police and an officer arrived. Irene was argumentative with the officer but eventually left. The officer suggested Katie get an order of protection against Irene.

¶ 8      Katie testified that Irene thinks Katie is an evil person, that she is verbally abusive in her emails and texts, and has been asked to stop contacting Katie and her family. After Katie told Irene not to contact her or her family, Irene continued to send mail and packages to their house. Katie testified that she was told "by another family member that [Irene] does own a gun now which is concerning to me as well." Katie testified that Ron had told Tim in an email that if Tim ever disrespected Irene again, Ron would "put him in his place."

¶ 9      The day after Irene was outside Katie and Tim's house, Ron emailed several family members, including Tim, stating that Irene was walking around their house because she was praying. He called Katie "psychotic" for calling the police on Irene and said that she was a truly detestable person.

¶ 10     Prior to that email, Ron had sent Tim and Katie emails saying that the Covid vaccine that they had gotten was going to cause them bodily harm, and a link to their daughter's school board meeting about books that were being read at their daughter's school.

¶ 11 When asked why Katie called the police on Irene that day in November, she replied that Tim's brother had told her that Irene wanted to go to her daughter's bus stop to say hello, and that Katie did not know what Irene would have done if Katie had not been there.

¶ 12 The circuit court found that Katie was protected under the provisions of the statute, and that there was a sufficient allegation of abuse as defined in the statute, "*i.e.* harassment."

¶ 13 An emergency order of protection was entered against Irene and Ron for three weeks. On January 2, 2024, the parties appeared for a hearing. The circuit court noted that if Ron and Irene wished to agree to the order, it would be prepared, and they would be free to go. Ron and Irene indicated that they wished to contest the order. The circuit court gave all the parties three weeks to get lawyers. The emergency orders of protection were continued to February 22, 2024. The case was then continued twice more, culminating in a hearing on May 21, 2024.

¶ 14 At the May 21, 2024, hearing, Irene Dittmer testified first. She testified that she sent Tim text messages on January 14, 2022, in which she referenced a biblical murder of Isaac, which was a "sacrifice to test Abraham's faith, which never happened." Irene stated that she wrote that because it was a "time of testing for both of us."

¶ 15 Irene testified that she sent a text to Tim on August 11, 2022, accusing Katie of being a homewrecker and stating that her behavior was pure evil. Irene testified that it was evil for Katie and Tim to "cancel them for no reason." She stated she was then asked by Tim not to contact them anymore. Irene believed the no contact to be limited to her, not Ron, but in December 2022, they sent a Christmas card to Katie and Tim.

¶ 16 Then in November 2023, Irene took a walk near Katie and Tim's house. She "circled around the block and back." Irene stated that the bus stop happened to be on the course of that walk, but that she had no idea where the bus stop was. She testified that her sole purpose was a

"prayer walk." She saw the bus approaching but did not know whether one of the kids was on it. She slowed her pace, spotted one of her grandchildren, and did not see Katie there. She picked up her pace but then saw Katie and her other grandchild appear from around a fence.

¶ 17    On cross-examination, Irene stated that she never meant any of her texts to Tim to be threatening, and that she had never threatened violence against Katie or her grandchildren.

¶ 18    On the date in question, she was trying to do a prayer walk in which she was going to circle the perimeter of Katie and Tim's house seven times, but only completed five before being intercepted. She then completed the loop two more times in her vehicle.

¶ 19    Katie testified next that she and Tim stopped having regular communication with Irene and Ron in October 2020, at which point they started to go to counseling with them. They participated in counseling from November 2020 to February 2021. The counseling sessions stopped in February 2021 because Katie and Tim found out that Ron had been recording the sessions without their or their counselor's knowledge. Around that same time, Tim found out that Irene and Ron started attending their church.

¶ 20    Katie testified that in March 2023, Ron sent her and Tim a recording of a school board meeting for the elementary school that one of Katie and Tim's children attended, and Ron sent Katie an email about the risks of the Covid vaccine.

¶ 21    On November 29, 2023, Katie left her house to meet her child at the bus stop. She noticed Irene walking across the street in front of her neighbor's house. Katie went back into her house to get her keys to lock the door before heading to the bus stop. Irene ended up at the fence line where Katie's child got off the bus. Katie took a picture of Irene. Irene then followed them back to their house and walked around the cul-de-sac.

¶ 22     Katie testified that she was extremely nervous when she saw Irene outside that day. She knew she had to get to the bus stop before Irene and did not know what would have happened if she did not. She had just learned four days earlier that Irene had purchased a "machine gun," and she had a long coat on. Katie knew Irene hated her and she was concerned for her safety and her children's safety. She testified that she thought Irene would abduct her child. Katie contacted the police and filed a police report.

¶ 23     Katie obtained an emergency order of protection on December 12, 2023, and received an email from Ron on December 13, 2023. The email stated that Katie and Tim had placed an order of protection against him and Irene, and that people should consider this when sending out invitations to family events. Katie and Tim have not received anything since that email.

¶ 24     Ron testified next that he found out about the order of protection when he got an email from the State of Illinois saying that there were changes to his FOID card. When he logged on to see what the changes were, he saw that his FOID card was suspended and that there was an order of protection placed against him.

¶ 25     Ron then emailed the extended family – including Katie and Tim – about the order of protection. Before that, he had thought the request to stop communicating only applied to Irene. He admitted, however, that he sent an email in 2021 acknowledging that Katie and Tim had prohibited him and Irene from seeing their grandchildren. Ron also admitted that there were two instances where he and Irene did not abide by their request – once when they sent a package in November and a Christmas card in December.

¶ 26     Ron further acknowledged that he had sent an email on November 30, 2023, calling Katie a detestable person and referring to her as Satan.

¶ 27   He testified that he and Irene joined Tim and Katie's church in 2020 because they liked the church, not as a way to get closer to Tim and Katie or the grandchildren.

¶ 28   Hellen Velleuer testified next on behalf of Irene and Ron. She testified that she was the handout director for the church that Katie, Tim, Ron, and Irene all belonged to. She was talking to Irene about the issues with Tim and Katie, and suggested a prayer walk.

¶ 29   John Dittmer, Tim's brother, testified that Katie called him on the day Irene was outside her house, and asked him why she would be there. He answered that she was probably there to say hello to one of the grandchildren at the bus stop. He did not know she was there to do a prayer walk until he called his father. John testified that Irene would never harm his nieces, and that he had never known her to harm anyone.

¶ 30   The court stated that it had read through all the exhibits, looked at the photographs and Ring videos, and listened to the testimony of all the witnesses who testified and considered the credibility of the witnesses. It noted that abuse, as defined by the Illinois Domestic Violence Act, means physical abuse, harassment, intimidation of a dependent, interference with a person's liberty, or willful deprivation. It found that it was troubling that Ron and Irene continued to communicate with Katie and Tim despite being told not to, and that they changed churches to Tim and Katie's church. The court found Irene and Ron's reasons for doing so to be not convincing. The court also found it troubling that the prayer walk by Irene was at the time that Katie and Tim's child was getting off the bus and that the police told Irene to leave the area, but she disobeyed that order. The court found the language used in an email to the family was disrespectful, mean and abusive to Katie.  The court also found that Irene and Ron's behavior inferred a risk of future harm to Katie and her family.

¶ 31    The court found that Katie had met her burden beyond a preponderance of the evidence. The court issued a two-year no contact plenary order of protection, pursuant to the Illinois Domestic Violence Act (750 ILCS 60/219 (West 2024)), against Ron and Irene, on Katie, Tim, and the two children. Irene and Ron now appeal.

¶ 32                                                    II. ANALYSIS

¶ 33    On appeal, Irene and Ron contend that: (1) the plenary orders of protection violate Ron and Irene's First, Second, Fifth and Fourteenth Amendment rights; (2) the trial court abused its discretion when failing to consider Ron and Irene's permissible communications; and (3) Ron and Irene received ineffective assistance of counsel. Katie filed a motion for sanctions, which we took with the case, and will address below.

¶ 34                            A. Illinois Supreme Court Rule 341(h)

¶ 35    As an initial matter, petitioner alleges that Ron and Irene's brief should be stricken, and this appeal dismissed for their failure to comply with Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Illinois Supreme Court rules "are not suggestions; rather they have the force of law, and the presumption must be that they will be obeyed and enforced as written." *People v. Campbell*, 224 Ill. 2d 80, 87 (2006). This court has inherent authority to sanction parties who violate those rules. *Doe v. Township High School Dist. 211*, 2015 IL App (1st) 140857, ¶ 123.

¶ 36    Respondents' brief violates Rule 341(h)(1) in several ways: (1) it does not contain a table of contents with page numbers and authorities in violation of Rule 341(h)(1) (eff. Oct. 1, 2020) (an appellant's brief must contain a table of contents, including a summary statement, entitled "Points and Authorities" of the points argued and the authorities cited in the Argument); (2) it does not contain a concise statement of the applicable standard of review, "with citation to authority" in violation of Rule 341(h)(3); (3) it fails to provide the basis for the appeal including the supreme

court rule or other law which confers jurisdiction, the facts of the case which bring it within this rule or other law, the date that the order being appeal was entered, and any other facts necessary to demonstrate the appeal was timely, in violation of Rule 341(h)(4)(ii); (4) it includes argument in the fact section in violation of Rule 341(h)(6); and (5) it only cites to a single case in the entirety of the brief, in violation of Rule 341(h)(7) (requiring that the Argument section contains "citation of the authorities and pages of the record relied on").

¶ 37    We note that brief contents required by Rule 341(h) are not "intended as academic exercises or meaningly busy work for appellants. They serve a purpose, and when appellants fail to comply with the Rules, that purpose is thwarted." *Shared Imaging v. Hamer*, 2017 IL App (1st) 152817, ¶ 22. Appellants who have failed to comply with Rule 341 have seen their contentions waived, briefs stricken, and appeals dismissed. See *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 18 ("Where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal."). This brief is so deficient that whether to dismiss the appeal is a close call. Nonetheless, we will consider the merits of this appeal based on the brief presented, finding that respondents' lack of compliance with Supreme Court Rule 341(h) does not preclude our review of all the issues. *North Community Bank v. 17011 South Park Ave.*, *LLC*, 2015 IL App (1st) 133672, ¶ 14.

¶ 38                                B. Constitutional Claims

¶ 39    Respondents' first argument on appeal is that the plenary orders of protection violate their respective First, Second, Third, and Fourteenth Amendment rights. However, respondents do not explain how the orders of protection violate their Second, Third, or Fourteenth Amendment rights, and therefore those arguments are forfeited. It is axiomatic that the appellate court "is entitled to

have issues clearly defined with pertinent authority cited and cohesive arguments presented," and that this court "is not a repository into which an appellant may foist the burden of argument and research." *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297 (2010). Pursuant to these principals, we may hold that a party to an appeal has forfeited the party's argument "by failing to develop it or cite any authority to support it." *Id*. "That is because "it is neither the function nor the obligation of this court to act as an advocate or search the record for error," and because "[b]are contentions in the absence of argument or citation of authority do not merit consideration on appeal." *Overt v. Saville*, 253 Ill. App. 3d 677, 682 (1993).

¶ 40   Here, respondents merely state that the trial court "made a mistake" by issuing the plenary orders of protection against Irene and Ron, and that "[d]oing so without just cause violated their 1st, 2nd, 5th, & 14th Amendment Rights." Respondents make no attempt to argue how or why these rights were violated, and thus these bare contentions, without argument or citation of authority, do not merit our consideration.

¶ 41   While respondents make a cursory argument for why their First Amendment rights were violated, that argument is also forfeited, as it was not raised in the trial court. It is well established that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Flood v. Wilk*, 2019 IL App (1st) 172792, ¶ 29. "In civil cases, constitutional issues not presented to the trial court are deemed forfeited and may not be raised for the first time on appeal." *Sherman v. Indian Trails Public Library District*, 2012 IL App (1st) 112771, ¶ 21 (finding that challenges to the petitioners' first amendment civil rights, including their right to free speech, to be forfeited because they were raised for the first time on appeal). Here, respondents do not provide, and the record does not reveal, any instance in which respondents raised their First Amendment rights in the trial court. Accordingly, this issue is forfeited.

¶ 42                    C. Propriety of Plenary Orders of Protection

¶ 43    Respondents' next argument on appeal is that the trial court "exercised an Abuse of Discretion without consideration to Ronald & Irene's Christian faith" and "erred in finding that Katie met her burden of proof." We note that this portion of respondents' argument section is completely devoid of any citations to authority. Ill. S. Ct. R. 341(h)(7)(eff. Oct. 1, 2020) (the argument section must contain "citation of the authorities and pages of the record relied on"). Additionally, the argument is not cohesive or developed, and instead consists of a list of 15 grievances, including alleged errors made by the trial court. *Velocity Investments*, 397 Ill. App. 3d at 297 (it is axiomatic that the appellate court "is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented," and this court "is not a repository into which an appellant may foist the burden of argument and research").

¶ 44    To the extent respondents appear to be making the argument that the trial court's orders of protection were against the manifest weight of the evidence, we will address this issue. In any proceeding to obtain an order of protection under the Illinois Domestic Violence Act, the central inquiry is whether the petitioner has been abused. *Best v. Best*, 223 Ill. 2d 342, 348 (2006); 750 ILCS 60/214(a) (West 2024)). Under section 214(a) of the Act, once the trial court finds that the petitioner has been abused, "an order of protection *** shall issue." 750 ILCS 60/214(a) (West 2024). Section 205(a) of the Act provides that proceedings to obtain an order of protection are civil in nature and governed by a preponderance of the evidence standard:

> "Any proceeding to obtain, modify, reopen or appeal an order of protection ***
>
> shall be governed by the rules of civil procedure of this State. The standard of proof
>
> in such a proceeding is proof by a preponderance of the evidence, whether the
>
> proceeding is heard in criminal or civil court." 750 ILCS 60/205(a) (West 2024).

¶ 45    Accordingly, sections 205(a) and 214(a) establish that: (1) whether the petitioner has been abused is the central issue in order-of-protection proceedings, and (2) whether the petitioner has been abused is an issue of fact that must be proven by a preponderance of the evidence. *Best*, 223 Ill. 2d at 348. When a trial court makes a finding by a preponderance of the evidence, this court will reverse that finding only if it is against the manifest weight of the evidence. *Id*.

¶ 46    Section 103(1) of the Act states that "Abuse" means "physical abuse, harassment, intimidation of a dependent, interference with personal liberty or willful deprivation but does not include reasonable direction of a minor child by a parent or a person in loco parentis." 750 ILCS 60/103(1) (West 2024). "Harassment" means:

>   "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner." 750 ILCS 60/103(7) (West 2024).

¶ 47    Here, the trial court found that petitioner met her burden of proving abuse by a preponderance of the evidence, and we hold that such finding by the trial court was not against the manifest weight of the evidence. The evidence showed that Irene and Ron made repeated contact with Katie, Tim, and their children, after specifically being asked not to do so. In January 2022, Irene sent Tim a text message that references a biblical murder; in August 2022, she accused Katie of being a homewrecker and that she was pure evil; in November 2022, Ron and Irene sent a package to the children; in December 2022, they sent a Christmas card to Katie and Tim's house; in March 2023, Ron sent Katie and Tim a recording of a school board meeting for their child's elementary school; on November 29, 2023, Irene was outside Katie and Tim's house at the same time their child was getting off the bus; and on December 13, 2023, one day after Katie received

an emergency order of protection against Irene and Ron, Ron sent an email to her, Tim, and other members of their family. Katie also testified that before she saw Irene outside her house, she had become aware that Irene and Ron had bought a gun and she was extremely nervous when she saw her near her child's bus stop, wearing a long coat. She also had spoken to her brother-in-law, who thought that the reason Irene was outside the house was to see the child at the bus stop. Testimony was presented that Irene and Ron had also recently switched churches to be members at Katie and Tim's church after participating in their previous church for years.

¶ 48    We find that it was not against the manifest weight of the evidence to find abuse where respondents were harassing Katie and Tim's family by making repeated contact with the family, which was not necessary to accomplish a purpose that is reasonable under the circumstances and was causing Katie and her family emotional distress. 750 ILCS 60/103(7) (West 2024).

¶ 49    To the extent that respondents contend that there was conflicting witness testimony, or that the trial court misunderstood certain witness testimony, we reject that argument. As the trier of fact, it is the trial court's role to weigh the evidence, make credibility determinations, and to resolve conflicts in expert testimony. *Chandler v. Maxwell Nursing Home, Inc.*, 281 Ill. App. 3d 309, 318 (1996). This is because the trier of fact is in the best position to see the witnesses, observe their demeanor, and assess the relative credibility where there is conflicting testimony on issues of fact. *Id*. Accordingly, having found that the trial court's finding of abuse was not against the manifest weight of the evidence, we will not reassess the witnesses' credibility or demeanor.

¶ 50    We briefly address respondents' argument that the trial court improperly heard evidence in both cases at the same time. Once again, respondents do not support this claim with authority or coherent argument. See *Velocity Investments*, 397 Ill. App. 3d at 297 (a party's argument on appeal is forfeited if it is not developed or does not cite to any authority to support it). Forfeiture aside,

we find no error.  The trial court explained that the testimony for the emergency order of protection was held simultaneously and Katie testified with respect to both individuals.  The court noted that while counsel asked for the cases to be heard separately, he did not ask for one of the respondents to wait outside while the other was testifying.  The court explained that for these reasons and for judicial economy and to further the cases along, the court heard the cases together.  The court further stated that it considered the testimony of each witness separately and considered the testimony of the respondents when they testified only as to what they were called for and not as to the other witness. Accordingly, we find that the trial court did not abuse its discretion in hearing the evidence in both cases at the same time.

¶ 51                                   D. Ineffective Assistance of Counsel

¶ 52    Respondents' final contention on appeal is that they received ineffective assistance of counsel for a myriad of reasons, including that counsel failed to file a motion to separate the cases, failed to prepare for hearings, failed to prepare witnesses, and failed to call Tim as a witness.

¶ 53    However, proceedings to obtain an order of protection under the Illinois Domestic Violence Act are civil in nature (*McClellan v. Hull*, 2023 IL App (1st) 220455, ¶56), and a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), is ordinarily only available in criminal cases. See *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60 (2005) (stating the "[s]tandards applicable to claims of ineffective assistance of counsel do not apply to a petitioner's claims of ineffective assistance of counsel in connection with a judgment under the [Code of Civil Procedure], as they might in criminal proceedings"). A narrow exception applies when a civil statute expressly guarantees a civil litigant the right to counsel. *In re Commitment of Dodge*, 2013 IL App (1st) 113603, ¶ 20. That is not the

case here and thus we find respondents' assertions to be devoid of merit. See 750 ILCS 60/101 *et seq.* (West 2024).

¶ 54                                    E. Sanctions

¶ 55    As a final matter, we address petitioner's request for sanctions against respondents. Petitioner moved to dismiss the appeal as frivolous, based on the frivolous claim of ineffective assistance of counsel, the forfeiture of the issues raised on appeal, and false claims made by respondents in their brief. We took the motion with the case. On appeal, petitioner also contends that the constitutional arguments put forth on appeal were frivolous and respondents' brief failed to abide by the Illinois Supreme Court Rules. Petitioner asks this court to "pay petitioner damages" and "pay petitioner all reasonable costs incurred in defending this appeal, including attorney's fees."

¶ 56    Under Rule 375(b), an appeal will be deemed frivolous where it is not reasonably well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). A party may also be sanctioned for bringing an appeal for an improper purpose, such as to harass or to cause an unnecessary increase in the cost of litigation. *Id.* While respondents' briefs on appeal had many shortcomings, all of which we have already addressed in this order, we do not find that they warrant sanctions under Rule 375, which are penal in nature. *Harris v. Harris*, 196 Ill. App. 3d 815, 831 (1990). Although we are unconvinced by respondents' arguments on appeal, we do not find that their arguments were completely without merit. Accordingly, we decline to impose sanctions in this case.

¶ 57                                    III. CONCLUSION

¶ 58    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and

deny petitioner's request for sanctions.

¶ 59    Judgment affirmed; request for sanctions denied.